675 So.2d 598 (1995)
METROPOLITAN DADE COUNTY, etc., Petitioners,
v.
Martin BLUMENTHAL, Trustee, Respondent.
Nos. 94-52, 94-137.
District Court of Appeal of Florida, Third District.
June 21, 1995.
Order Granting Certiorari on Rehearing February 21, 1996.
Rehearing Denied June 5, 1996.
*599 Robert A. Ginsburg, Dade County Atty., Daniel A. Weiss, Asst. County Atty., John G. Fletcher, Miami and Joni Armstrong Coffey and Craig H. Coller, Assistant County Attorneys, for petitioners.
Greenberg, Traurig, Hoffman, Lipoff, Rosen & Quentel, Clifford A. Schulman, Elliot H. Scherker and Reginald L. Bouthillier, Jr., Miami, for respondent.
Shubin & Bass, Miami, for Redlands Citizens Association, Inc. and Bird-Kendall Homeowners' Association, Inc., as amicus curiae.
Before HUBBART, COPE and GODERICH, JJ.
Order Granting Certiorari on Rehearing En Banc February 21, 1996 and Adopting Judge Cope's Dissent to the Panel Opinion As the Opinion of the Court.
PER CURIAM.
The petitioners, Metropolitan Dade County, West Dade Federation of Homeowner Associations, Inc., Morgan I. Levy, Russell Geyer, and John H. Bechamps, petition for a writ of certiorari to review the decision of the Dade County Circuit Court, Appellate Division, which granted a petition for writ of certiorari on behalf of the respondent, Martin Blumenthal, Trustee [Blumenthal]. We deny the petition.
Blumenthal applied to Metropolitan Dade County to rezone a twenty-acre parcel in West Dade in order to develop a 360 unit apartment complex. The rezoning application requested that the property be rezoned from GU (an interim zoning designation) to RU-4L (Residential Limited Apartment House with a maximum of twenty-three units per acre). Under Dade County's Comprehensive Development Master Plan (CDMP), the parcel is located within an area designated as medium density residential use which permits twenty-five dwelling units per acre. Blumenthal's proposed project, Devon Lakes, would have eighteen units per acre.
The rezoning application was submitted to the county's Developmental Impact Committee (DIC).[1] The DIC's detailed report addressed the impact the project would have on the environment, the economy, transportation, and essential services such as potable water supply, sewer service, police, fire, parks, schools, and solid waste management.
*600 In addition, the DIC's report stated that there is a need for this type of affordable housing in the area.[2] After a thorough review, the DIC found that the requested zoning was consistent with the CDMP and recommended that the property be rezoned as requested.
At the Metropolitan Dade County Commission hearing, Blumenthal's counsel presented evidence and experts in support of the rezoning application. Mr. Martin Tabor, the developer, introduced a map of the area. The map showed that many nearby developments were also zoned as RU-4L. Mr. Tabor also explained that the proposed project meets or exceeds every planning and zoning requirement. In addition to Mr. Tabor's testimony, other experts also testified in favor of the proposed project.
Counsel for the West Dade Federation of Homeowner Association [Federation] stated that his client objected to an eighteen-unit per acre density, but that it would agree to thirteen units per acre.[3] Morgan Levy, the president of the Federation, explained to the Commission that although nearby developments were zoned RU-4L, the average density for Doral Park, which is located east of the subject parcel, is six units per acre. Levy also explained that the Commission, through prior zoning decisions in favor of the Federation, had established a "trend" of limiting the area east of N.W. 114th Court, where the subject parcel is located, to a density of thirteen units per acre. In order to explain this "trend," Mr. Levy introduced a map of Section 19, the section containing the subject parcels. Section 19 runs from N.W. 117 Avenue to N.W. 107 Avenue, and from N.W. 41 Street to N.W. 58 Street. The subject property borders N.W. 107th Avenue at approximately N.W. 43 Street. The only project within Section 19 is the Mag-Landea project which runs from approximately N.W. 117th Avenue to N.W. 112 Avenue and from N.W. 48 Street to N.W. 51 Street. The Mag-Landea project is approximately eighty acres with an average density of approximately eighteen units per acre; the western forty acres have a density of twenty-three units per acre, while the eastern forty acres (east of N.W. 114th Court) have a density of thirteen units per acre. Mr. Levy argued that the "trend" was to limit the density of any project east of N.W. 114th Court to a density of thirteen units per acre. Therefore, Mr. Levy's evaluation of the zoning "trend" for Section 19 was based only on the Mag-Landea project since the remainder of Section 19 is undeveloped. In addition to Mr. Levy's testimony, Dorothy Posada, a member of the board of directors of the Doral Woods Homeowners Association, stated that the existence of an apartment complex near her development with a density of twenty-three units per acre, has depressed the value of homes in the area.[4]
The Commission denied Blumenthal's rezoning application stating at the hearing that thirteen units per acre was an emerging trend in the area. The Commission's resolution stated that the rezoning "would be incompatible with the neighborhood and area concerned and would be in conflict with the principles and intent of the plan for the development of Dade County."
Thereafter, Blumenthal filed a petition for writ of certiorari to review the Commission's decision. The circuit court, appellate division, *601 granted the writ finding that the Commission's decision was "arbitrary and not based on substantial competent evidence, as the neighbors' testimony in opposition was conclusionary and without adequate support." This petition for writ of certiorari follows.
As explained in City of Deerfield Beach v. Vaillant, 419 So.2d 624 (Fla.1982), this court's scope of review in the instant case is very narrow.
[W]here full review of administrative action is given in the circuit court as a matter of right, one appealing the circuit court's judgment is not entitled to a second full review in the district court. Where a party is entitled as a matter of right to seek review in the circuit court from administrative action, the circuit court must determine whether procedural due process is accorded, whether the essential requirements of the law have been observed, and whether the administrative findings and judgment are supported by competent substantial evidence. The district court, upon review of the circuit court's judgment, then determines whether the circuit court afforded procedural due process and applied the correct law.
Vaillant, 419 So.2d at 626; see Board of County Comm'rs of Brevard County v. Snyder, 627 So.2d 469, 476 (Fla.1993). Since the petitioners have not raised the issue of whether the circuit court afforded them procedural due process, the only issue presented is whether the circuit court applied the correct law.
In the instant case, the circuit court applied the correct law when it found that the Commission's decision was not supported by competent substantial evidence. The petitioners argue that this court should reevaluate the circuit court's finding that the Commission's decision was not supported by competent substantial evidence. Under the parameters set forth in Vaillant, this court would be exceeding its scope of review if it did.
Although not necessary for our decision, we, nonetheless, are of the opinion that the Commission's decision was not based on competent substantial evidence. The Commission's decision was based mainly on the testimony of an objecting neighbor, Morgan Levy. In essence, Mr. Levy testified that a zoning "trend" had been established to limit the density in the subject area to thirteen units per acre. However, Mr. Levy is not an expert on zoning matters and is, therefore, unqualified to testify as to zoning trends. There are instances in which lay persons are just as qualified as expert witnesses to offer their views on certain matters. For example, a lay person is just as qualified as an "expert witness" to testify as to natural beauty. See Board of County Comm'rs of Pinellas County v. City of Clearwater, 440 So.2d 497 (Fla. 2d DCA 1983); see Grefkowicz v. Metropolitan Dade County, 389 So.2d 1041 (Fla. 3d DCA 1980) (finding that neighboring property owners' testimony that zoning applicants intended to use strictly residential property for commercial use constitutes competent substantial evidence). But lay persons are not just as qualified as expert witnesses to offer their conclusions or predictions as to zoning trends.[5] Moreover, even if Mr. Levy were just as qualified as an expert to testify as to zoning trends, the construction of one or two projects with densities of thirteen units per acre is not sufficient to establish a "trend."
Accordingly, we deny the petition for writ of certiorari because to make a determination as to competency and sufficiency of the evidence presented at the hearing would be an impermissible reevaluation of the evidence and outside the scope of our review.
HUBBART and GODERICH, JJ., concur.
COPE, Judge (dissenting).[*]
I respectfully dissent. It is clear from the face of the circuit court's opinion that the court applied the incorrect law. Certiorari should be granted. In denying relief, the majority ruling is in conflict with applicable *602 precedents of this court and other Florida courts.

I.
Respondent Martin Blumenthal, Trustee ("developer") desires to build a 360-unit apartment complex on vacant land in the western area of Dade County, Florida. He applied for a zoning change from its existing GU (Interim) classification to RU-4L (Limited Apartment House). His requested density of 18 units per acre was objected to by homeowners in the general area. After taking testimony pro and con, the County Commission denied the rezoning application without prejudice. The evident consensus of the County Commission was that the density should not exceed 13 units per acre.
The developer petitioned for certiorari in the circuit court. A circuit court panel heard the case and issued a written opinion finding the County Commission decision to be "arbitrary and not based on substantial competent evidence." Circuit court opinion at 3.
Dade County and certain homeowners who participated in the proceedings below ("the homeowners")[1] have petitioned in this court for certiorari. They contend that the circuit court failed to apply the correct law. Their position is well taken.

II.
The proposed apartment site is located in Section 19, a tract of vacant land lying between Doral Park and the Florida Turnpike. Section 19 is an exact square containing one square mile of undeveloped land. Section 19 is bounded on the east by northwest 107th Avenue, on the west by northwest 117th Avenue, on the south by northwest 41st Street, and on the north by northwest 58th Street. The proposed apartment complex, Devon Woods, would be located on 20 acres near the southeast corner of Section 19.
No one opposed the building of an apartment complex on the developer's 20-acre site. The question was whether the requested density of 18 units per acre was appropriate for this location, as the developer contended, or whether the density at this location should be restricted to 13 units per acre, as desired by the homeowners in the area.

III.
To state the obvious, the County Commission in making a zoning decision may legitimately take into consideration the consistency of the proposed project with the adjacent properties and the actual development of the area. Dade County v. Inversiones Rafamar, S.A., 360 So.2d 1130, 1132 (Fla. 3d DCA 1978); Code of Metropolitan Dade County, § 33-311.
The facts of this case are essentially undisputed. In Section 19 the County Commission had already approved a 1,440-unit residential subdivision called Mag Landea. Mag Landea faces northwest 117th Avenue and extends inward one-half mile to the middle of Section 19. The average density for Mag Landea is 18 units per acre.
However, the Mag Landea property has two distinct segments. The westernmost segment of Mag Landea ("Mag Landea West") has an authorized density of 23 units per acre and extends into the interior of Section 19 one-quarter mile. The eastern segment of Mag Landea ("Mag Landea East") has an authorized density of 13 units per acre. It extends eastward another quarter mile, to the center of Section 19. Proceeding eastward from Mag Landea, there is a gap of about one-quarter mile of vacant land, following which is the site of the developer's proposed apartment complex.
Thus, in looking at Section 19, these properties can be visualized loosely as a belt, or chain, stretching west-to-east across the middle of Section 19. Moving left to right (west to east), the properties are (1) Mag Landea West, (2) Mag Landea East, (3) vacant land, (4) developer's site (Devon Woods).
The entrance to the proposed apartment complex would be on northwest 107th Avenue. Across the street to the east of the *603 proposed apartment site is the Doral Golf Course. East of the golf course are low-density golf course homes.[2]
Consequently, the proposed apartment complex is sandwiched between Mag Landea on one side and a low density area of Doral Park on the other. The County Commission had to decide what density was appropriate for the site, considering the other authorized densities in the area.
No one argued that the apartment site should have the low densities prevalent in Doral Park, which were separated from Section 19 by the golf course. The focus instead was on Mag Landea, the nearest neighbor to the west.
The developer's analysis was that Mag Landea should be viewed as having an average density of 18 units per acre. He argued that he was simply seeking the same density that Mag Landea already had. He also argued that a higher density is appropriate on the major transportation arteries. Mag Landea has 23 units per acre fronting on such an artery, northwest 117th Avenue. Since northwest 107th Avenue would also be a major corridor, the developer argued that his 18-unit requested density on northwest 107th Avenue was reasonable and conservative compared to Mag Landea's 23-unit density on 117th Avenue. Somewhat inconsistently, the developer also argued that the Commission should disregard or discount Mag Landea as a precedent, because Mag Landea had agreed to the 23-unit/13-unit split density in order to settle litigation.
The homeowners argued that 13 units per acre was the appropriate figure, rather than 18 units per acre. They pointed out that it is misleading to treat the Mag Landea project as containing 18 units per acre, because that figure is obtained by averaging two very different density levels. The homeowners argued that the density should be the same as the nearest neighbor, Mag Landea East, at 13 units per acre. Mag Landea East was only a quarter mile away from the proposed apartment complex. Counsel for the homeowners pointed out that there had been other applications brought before the Commission for RU-4L zoning in this area, which the County Commission had defeated.[3]
Petitioner Levy introduced without objection a diagram of Section 19 which showed the relationship of Mag Landea to the proposed apartment complex. Petitioner Levy testified:
This Commission has voted twice on our behalf on the 13 units per acre. As you see over here, the Mag Landea area is in yellow and green. And you voted twice to give them 23 units per acre on the Western 40 acres and 13 units in the green area, green section on the Eastern 40 acres.
I'll take the liberty of drawing a wavy red line down 114th, called 114th Court. It is not built, but that is the center line between those two [tracts] and that is the boundary that you have set. We hope you maintain 13 units per acre for the rest of this area.

Now, we ask you to maintain that [13 units per acre] east of 114th Court.
(Emphasis added).
After other testimony and closing arguments, the County Commission voted to deny the rezoning. The County Commission's resolution states, "it is the opinion of this Board that the requested district boundary change to RU-4L would be incompatible with the neighborhood and area concerned and would be in conflict with the principles and intent of the Plan for the Development of Dade County, Florida, and should be denied without prejudice." (Emphasis added).

*604 IV.
On petition by the developer the circuit court granted certiorari and disapproved the County Commission resolution. The circuit court's reasons for granting certiorari were as follows:
Although the Commission indicated in rejecting the developer's application that 13 units per acre was an emerging trend in the area, there was no competent substantial evidence to support the Commission's decision to reject the developers amended application. A recent compromise of zoning litigation resulted in approval of a project nearby of 13 units per acre but the maps in evidence failed to show such a trend. The maps in evidence supported the developer's argument that the rezoning was consistent with and required by land uses previously permitted.
....
From the record, it appears that the decision below is arbitrary and not based on substantial competent evidence, as the neighbors' testimony in opposition was conclusionary and without adequate support.
We grant the petition for writ of certiorari and remand for further proceedings for determination of the proper zoning classification for the developer's property consistent with this opinion.
The circuit court opinion reflects several errors of law. The circuit court's first legal error was in deciding to review the remarks of an individual commissioner, rather than reviewing the written Resolution passed by the Commission.
It is axiomatic that the County Commission speaks through its written Resolution. In this case eight County Commission members participated in the meeting and voted on this Resolution. It is the collective ruling of the Board, as expressed in the County Commission Resolution, which is at issue here. See Penn v. Pensacola-Escambia Governmental Ctr. Auth., 311 So.2d 97, 101 (Fla.1975); Beck v. Littlefield, 68 So.2d 889, 892 (Fla.1953).
The County Commission's resolution in this case states in part, "it is the opinion of this Board that the requested district boundary change to RU-4L would be incompatible with the neighborhood and area concerned...." (Emphasis added). The legal issue which should have been determined below is whether there was substantial competent evidence to support that finding.
The circuit court opinion incorrectly characterized the County Commission ruling. The court stated in part that "the Commission indicated in rejecting the developer's application that 13 units per acre was an emerging trend in the area...." Circuit Court opinion at 2. The circuit court goes on to say that the evidence "failed to show such a trend."
The Commission made no finding that there was a "trend" emerging in this area. The reference to a "trend" in the area comes from a comment by one of the Commissioners, who seconded the motion to deny the application. The Commissioner stated:
COMMISSIONER PENELAS: I'm going to second the motion. If I may speak.
I'm notJeff, I'm not totally convinced that the rental argument is really the correct argument. I mean that is a [choice] that the developers made to have rental units there. That's not something that necessarily needs to be in the neighborhood. If he chooses to do that he has the right, but that decision should not necessarily become the reason why we should deny 13 units an acre because he won't be able to rent them.
As you know at 13 units an acre he can do anything and everything. That's 13 units or less, including building homes if he wishes to do so.
I also think that we established a very reasonable trend in the area by our previous decisions and I think that we should live up to that and send a very clear message to future developers. That's what we are looking for in the area and that is why I am happy to second the motion.
The Commissioner was certainly entitled to express the view that prior zoning decisions had, in fact, established a trend in that particular area. However, the decision whether to rezone here did not hinge on *605 establishing the existence or nonexistence of a "trend." What the County Commission actually adopted as its Resolution was a statement that the requested rezoning "would be incompatible with the neighborhood and area concerned."
The legal issue for the circuit court to consider was whether or not there was substantial competent evidence to support the Commission's resolution. By reviewing the comment of an individual County Commissioner, rather than the Commission's actual written Resolution, the circuit court panel applied the incorrect law. Penn; Beck.

V.
The circuit court's next legal error was in misapprehending the legal standard applicable to the rezoning application. The Dade County Code provides that in considering zoning applications, the purposes to be accomplished are, in part, "to provide a comprehensive plan and design to lessen the congestion in the highways; ... to provide adequate light and air; to prevent the overcrowding of land and water; to avoid undue concentration of population; ... with the view of giving reasonable consideration among other things to the character of the district or area and its peculiar suitability for particular uses and with a view to conserving the value of buildings and property and encouraging the most appropriate use of land and water throughout the County." Code of Metropolitan Dade County, § 33-311.[4]
This court has said that in a zoning matter, it is appropriate to consider whether the proposed zoning "is consistent with the properties adjacent to [the to-be-rezoned] property and is consistent with the actual development of the area." Dade County v. Inversiones Rafamar, S.A., 360 So.2d 1130, 1132 (Fla. 3d DCA 1978).
With those considerations in mind, the facts must be reviewed regarding the neighboring properties. It is undisputed that the Mag Landea project had already been rezoned for actual development. The County Commission approved a density of 23 units per acre for the western section located along southwest 117th Avenue and a density of 13 units per acre for the eastern section of Mag Landea. The 13-unit per acre segment of Mag Landea is the closest residential project to the proposed apartment complex, one-quarter mile away. Directly east of the proposed apartment complex is a low-density area of Doral Park, which has a large amount of green space associated with the golf course.
Thus, there was an eminently reasonable basis on which the County Commission could conclude that it had already set a precedent for Section 19 when it approved the Mag Landea project. The County Commission could reasonably decide that the density for the proposed apartment complex should be the same as for the closest approved subdivision, namely, the Mag Landea East 13 units per acre. The County Commission could also reasonably decide that densities should descend from west to east on Section 19, beginning with 23 units per acre along northwest 117th Avenue (Mag Landea West); then drop down to 13 units per acre in the center and east part of Section 19 (Mag Landea and proposed apartment site); then drop down again on the east side of 107th Avenue in the already developed low density area of Doral Park.
That is, in fact, the argument accepted by the County Commission. Obviously, there is substantial competent evidence to support that determination. All of the relevant facts appear without material dispute in the record which was before the County Commission.
Is it permissible to say that there was a "trend" in this area? One can debate whether the approval of the two levels of density in Mag Landea, coupled with the County Commission's turn-down of other high density projects, amounted to a trend. However, there is no legal requirement that there be, or that the County Commission make a finding on, a "trend." What is clear is that the County Commission was attempting to arrive *606 at a policy for density in this area, and that it ultimately decided to set the density at exactly the same density it had approved for the nearest neighbor, the eastern segment of Mag Landea: 13 units per acre. There is simply no reasonable basis on which to overturn the County Commission's determination.
Could the County Commission have made a different determination on these same facts? Of course it could. The developer made a very respectable argument that his project could be distinguished from the remainder of this area. He contended that his higher proposed density on 107th Avenue was the functional equivalent of Mag Landea's 23-unit density on 117th Avenue. He urged that the apartment complex would blend with a commercial and office area along northwest 41st Street. The developer also argued that the golf course on the east side of northwest 107th Avenue provided a proper buffer between the proposed apartment complex and the residential areas of Doral Park. These are all perfectly reasonable arguments, and if the County Commission had chosen to accept those arguments, there was a factual basis in the record to support such a decision.
The point is that when the facts are such as to give the County Commission a choice between alternatives, it is up to the County Commission to make that choice not the circuit court. See City of Ft. Lauderdale v. Multidyne Medical Waste Management, Inc., 567 So.2d 955, 957-58 (Fla. 4th DCA 1990), review denied, 581 So.2d 165 (Fla.1991); see also City of South Miami v. Meenan, 581 So.2d 228, 228 (Fla. 3d DCA 1991). The circuit court's role is restricted to ascertaining whether there is substantial competent evidence to support the decision actually made herethe disapproval of the developer's application. City of Ft. Lauderdale v. Multidyne Medical Waste Management, Inc., 567 So.2d at 957-58.
Once it is recognized that the beginning point is the text of the County Commission Resolution, and once the correct legal standard is applied, it is seen that the County Commission decision is, in fact, supported by substantial competent evidence.

VI.
The circuit panel's next legal error was in saying that "the neighbors' testimony in opposition [to the zoning application] was conclusionary and without adequate support." Circuit court opinion at 3.
To begin with, this is not a case in which the material facts are in dispute. The question in this case boils down to whether the County Commission can hold this proposed apartment complex to 13 units per acre, given that the nearest neighboring tract, Mag Landea East, was also limited to 13 units per acre. The factsthe density at Mag Landea, the requested density on this site, and the densities at Doral Parkwere not matters of material dispute. The proximity of the proposed apartment complex to Mag Landea and Doral Park comes directly out of the County staff report which is of record in this case. The density at Mag Landea was first discussed by the developer's counsel in his initial presentation to the County Commission. As the parties went through their respective presentations, no one objected to, or disputed, the testimony of the various witnesses regarding the approved density levels of the various sites in this area.[5]
The circuit court's view is even more remarkable given the fact that the homeowners in this case had retained very experienced zoning counsel, John Fletcher, who regularly practices in this field. The homeowners' counsel was very well qualified to give an analysis of the prior zoning approvals and applications in this area, and did so. Counsel and the President of the Homeowners' Association both presented essentially the same arguments on the zoning in the area.
Leaving all of that aside, it is clear that in rejecting the citizens' testimony the circuit court was laboring under a misinterpretation of Judge Downey's much-cited opinion in City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974). In City of Apopka *607 the Orange County Commission turned down a zoning request for an airport, based on public input which was "in the main laymen's opinions unsubstantiated by any competent facts." 299 So.2d at 660 (emphasis added). The court explained that the purpose of the public hearing is not to conduct an opinion poll, but instead to allow the public to present facts from which the Board may make a decision. Id. at 659. "`The Board should base their determination upon facts which they find to have been established, instead of upon the wishes of persons who appear for or against the granting of the application.'" Id. (citation omitted).
Under the correct legal standard, citizen testimony in a zoning matter is perfectly permissible and constitutes substantial competent evidence, so long as it is fact-based. Id.; see also Grefkowicz v. Metropolitan Dade County, 389 So.2d 1041, 1042 (Fla. 3d DCA 1980). Mere generalized statements of opposition are to be disregarded, but fact-based testimony is not. "[T]he facts disclosed by objecting neighbors should be considered...." 3 Robert M. Anderson, American Law of Zoning 3d § 21.28, at 745 (1986). In deciding that the citizen testimony in this case had to be ignored, the circuit court clearly misunderstood City of Apopka v. Orange County.
The factnot opinionhighlighted by petitioner Levy in this case was that the boundary between the east part and west part of Mag Landea falls at 114th Court. No one disputes the accuracy of that fact. Petitioner Levy offered an unobjected-to diagram into evidence which showed the west part of Mag Landea, the east part of Mag Landea, and, further to the east, the proposed apartment complex. No one disputes the fact that the closest approved density to the apartment complex was the eastern segment of Mag Landea at 13 units per acre. Petitioner Levy urged the County Commission to use that density as the relevant benchmark, and to adhere to that density level east of 114th Court.
The citizen testimony in this case was fact-based, and perfectly proper. In reality, there was no dispute as to the material facts of the case in any event. The circuit court misapprehended the law on this point.

VII.
The majority opinion in this court says that the petition for certiorari to this court cannot be entertained because of the limitation on this court's scope of review imposed by City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982). That decision indicates that it is a circuit court function to determine "whether the administrative findings and judgment are supported by competent substantial evidence." Id. at 626; see also Board of County Comm'rs v. Snyder, 627 So.2d 469, 476 (Fla.1993).
While the majority has correctly stated our scope of review under City of Deerfield Beach v. Vaillant, the inquiry does not stop there. This court's scope of review includes the determination of whether the circuit court applied the correct law. 419 So.2d at 626. Here, it is very clear that the circuit court applied the incorrect law.
Furthermore, this court has previously ruled that we may entertain a petition for writ of certiorari where the circuit court has incorrectly applied the law to the facts of the case. Maturo v. City of Coral Gables, 619 So.2d 455, 457 (Fla. 3d DCA 1993); Herrera v. City of Miami, 600 So.2d 561, 563 (Fla. 3d DCA), review denied, 613 So.2d 2 (Fla.1992). "Neither is it sufficient, for the purpose of placing this case beyond review by certiorari, that the circuit court incanted principles of law generally governing cases of this type. We must next determine whether that law has been correctly applied to the facts as they appear in the record." Herrera, 600 So.2d at 563.
It is our responsibility, as part of the judicial review process, to ensure that the Circuit Court has properly applied the law in order to maintain the integrity of the legal system and legal processes. We cannot, and should not, turn a blind eye to an incorrect application of the law. To allow a decision to stand where the correct law was wrongly utilized, simply because that particular law itself was applicable, does *608 not provide a valid or just reason sufficient to support a legal decision.
Maturo, 619 So.2d at 457.
In a well-reasoned opinion, the Fourth District Court of Appeal granted certiorari review in a case similar to this one, where the issue was whether the trial court applied an incorrect legal standard in deciding that a city commission decision was not supported by substantial competent evidence. City of Ft. Lauderdale v. Multidyne Medical Waste Management, Inc., 567 So.2d 955 (Fla. 4th DCA 1990), review denied, 581 So.2d 165 (Fla.1991). The opinion is worthy of quotation at length because, among other things, the author is Judge Downeywho also wrote the decision in City of Apopka v. Orange County. The City of Fort Lauderdale v. Multidyne opinion states:
[The circuit] court in a very thorough, analytical order "reversed" the order of the City Commission, essentially holding that there was not substantial competent evidence adduced before the commission to justify denial of the permit application.
This appears to be a very close case. Nevertheless, following the most recent appellate pronouncements which finetune the respective standards of review in such matters, we are compelled to hold that the wrong standard of review was utilized and resulted in the circuit judge doing what the supreme court charged this court with doing in Education Development Center, Inc. v. West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla.1989); that is, he "simply disagreed with the [City Commission's] evaluation of the evidence." Id. at 108-109.
In its order the circuit court was careful to acknowledge the teachings of City of Deerfield v. Vaillant, 419 So.2d 624 (Fla. 1982), delineating the respective standards of review in the circuit and district courts, and Campbell v. Vetter, 392 So.2d 6 (Fla. 4th DCA 1980), rev. denied, 399 So.2d 1140 (Fla.1981), enjoining the circuit court from reweighing the evidence. Nevertheless, we believe the judge fell into error in his application of the rules set out in those cases. And we hasten to add, that's not hard to do in these cases.
The parties agree that the real issue here is whether there was substantial competent evidence in the record before the City Commission to support its denial of the application.
....
In all candor, if we were to weigh the professional expertise of one side against the other, Multidyne might well come out on top. However, the test is not whether one side produced more experts than the other, but rather whether there was any substantial competent evidence upon which to base the commission's conclusion. Substantial evidence is such evidence as will establish a substantial basis of fact from which one fact at issue can be reasonably inferred, i.e., such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. DeGroot v. Sheffield, 95 So.2d 912 (Fla.1957). To be competent the evidence relied on to sustain the ultimate finding should be sufficiently relevant and material so that a reasonable mind would accept it as adequate to support the conclusion reached. Id.

The circuit court frankly stated that it viewed the evidence opposing the permit as incompetent to carry the day against the testimony of Multidyne's experts. However, the opposing witnesses whom Multidyne denigrates were no group of "Apopka Witnesses," i.e., local residents who simply wished the facility to be established elsewhere. See City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974). To say that there was no substantial competent evidence to support the commission's determination is to ignore the record. We must therefore conclude that the circuit judge substituted his judgment as to the weight of the evidence for that of the commission, which is contrary to law.
567 So.2d at 957-58. The same reasoning applies to the present case.
All the district courts that have addressed this scope of review issue are in accord that where the circuit court applies an incorrect legal standard and erroneously determines that a zoning decision is not supported by substantial competent evidence, or *609 where the record is clear that the court has impermissibly reweighed the evidence, then the lower court has departed from the essential requirements of law and certiorari is available to the aggrieved party. City of Ft. Lauderdale v. Multidyne Waste Management, Inc., 567 So.2d at 958; Maturo v. City of Coral Gables, 619 So.2d at 457; Herrera v. City of Miami, 600 So.2d at 563; City of Deland v. Benline Process Color Co., 493 So.2d 26, 28 (Fla. 5th DCA 1986); Board of County Comm'rs v. City of Clearwater, 440 So.2d 497, 499 (Fla. 2d DCA 1983); Town of Mangonia Park v. Palm Beach Oil, Inc., 436 So.2d 1138, 1139 (Fla. 4th DCA 1983), review denied, 450 So.2d 487 (Fla.1984); see also Orange County v. Lust, 602 So.2d 568, 572 (Fla. 5th DCA) (en banc) (plurality opinion), review denied, 613 So.2d 6 (Fla.1992).
In the present case the circuit court applied incorrect legal standards. The legal issues raised by the County and homeowners are well within this court's scope of certiorari review.[6]

VIII.
The majority opinion also says that although the issue is beyond the scope of this court's review, there was no substantial competent evidence to support the County Commission action.
The majority opinion on this point is based on a factual error. The majority opinion states:
The Commission's decision was based mainly on the testimony of an objecting neighbor, Morgan Levy. In essence, Mr. Levy testified that a zoning "trend" had been established to limit the density in the subject area to thirteen units per acre. However, Mr. Levy is not an expert on zoning matters and is therefore unqualified to testify as to zoning trends.

Majority opinion at 601 (emphasis added); see also majority opinion at 600.
The problem is that petitioner Levy never used the word "trend" at all. Neither did the homeowners' counsel or the homeowners' other witnesses. The word "trend" appears once in the record before us: in the remarks by Commissioner Penelas at the conclusion of the County Commission hearing.
The majority opinion falls into the same error as that committed by the circuit court: it charges the homeowners with saying something they did not say; charges the County Commission with making a finding it did not make; implies that a finding of "trend" is an essential requirement for this zoning decision; and then overturns the County Commission's resolution on the basis of testimony that was never given, and a finding that was never made.[7]
The majority also suggests that citizens cannot testify about zoning without hiring an expert. That is simply not the law.[8]

IX.
The County Commission resolution in this case stated, quite simply, that "the requested district boundary change ... would be incompatible with the neighborhood and area concerned." The County Commission took the position that this applicant's project should not exceed the same density allowed to the nearest neighbor, Mag Landea East. That is a simple and unassailable determination by the County Commission for which there is ample substantial competent evidence.
For the reasons stated, the circuit court panel applied the incorrect law. Certiorari should be granted. The circuit court order should be quashed and the matter remanded *610 with directions to reinstate the County Commission Resolution.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, COPE, LEVY, GERSTEN and GODERICH, JJ.

ON REHEARING EN BANC
PER CURIAM.
Upon consideration of this matter en banc, the court grants the petitions for writs of certiorari filed by Metropolitan Dade County, the West Dade Federation of Homeowner Associations, Inc., Morgan I. Levy, Russell Geyer, and John H. Bechamps. We adopt Judge Cope's dissent to the panel opinion as the opinion of the court. We conclude that the issues presented by these petitions are substantial ones and fall within this court's scope of discretionary review as outlined in the Florida Supreme Court's recent opinion in Haines City Community Development v. Heggs, 658 So.2d 523, 530-31 (Fla.1995). The judgment of the circuit court is quashed and the cause is remanded with directions to reinstate the county commission resolution.
Certiorari granted.
SCHWARTZ, C.J., and BARKDULL, NESBITT, COPE, LEVY and GERSTEN, JJ., concur.
HUBBART, Judge (dissenting).
I must respectfully dissent. I would deny the petition for a writ of certiorari because, in my view, the circuit court in its appellate decision below did not depart from those requirements of law which are deemed essential to the administration of justice. That is, (1) the circuit court did not deny the petitioner procedural due process, (2) the circuit court did not exceed its jurisdiction in entertaining the cause below, and (3) the circuit court did not commit an error so fundamental in character as to fatally infect the judgment below and render it void as a miscarriage of justice [even assuming arguendo that the court was wrong in its decision that there was no substantial competent evidence to support the denial of the respondent's re-zoning application].

I
The Florida Supreme Court in the leading case of Haines City Community Development v. Heggs, 658 So.2d 523 (Fla.1995), comprehensively analyzes the standard of review to be employed by district courts of appeal when presented with a petition for a writ of certiorari seeking review of an appellate court decision of the circuit court. Speaking through Mr. Justice Anstead, the Court concludes that the standard of review in cases of this nature is not mere legal error as would be recognized upon the original appeal before the circuit court because the petitioner is not entitled to a second appeal before the district court; consequently, the district court may not determine whether the final judgment or order reviewed by the circuit court was supported by substantial competent evidence, as that issue is solely for the circuit court to determine. Instead, the Court held that the standard of review before the district court is much higher than upon the original appeal, namely, whether the circuit court departed from the essential requirements of the law. Departure from the essential requirements of the law, in turn, means a departure from those requirements of the law which are deemed essential to the administration of justice, namely, (a) a denial of procedural due process of law by the circuit court, or (b) an improper exercise of jurisdiction in the cause by the circuit court, or (c) the commission of an error by the circuit court, such as applying an incorrect rule of law, which is so fundamental in character as to fatally infect the judgment and render it void as being a miscarriage of justice.
In support of this holding, the Court in Heggs historically reviews its prior decisions on the proper scope of certiorari review of a circuit court appellate decision. The Court first quotes with approval from Basnet v. City of Jacksonville, 18 Fla. 523, 526-27 (1882), as a case "which retains its currency and whose clarity remains a hallmark":
"The question which this certiorari brings here is ... whether the Judge exceeded his jurisdiction in hearing the case at all, or adopted any method unknown to the law or essentially irregular in his proceeding *611 under the statute. A decision made according to the form of law and the rules prescribed for rendering it, although it may be erroneous in its conclusion as to what the law is as applied to facts, is not an illegal or irregular act or proceeding remedial by certiorari."
"[Certiorari jurisdiction] is original in the sense that the subject-matter of the suit or proceeding which it brings before the court are not here reinvestigated, tried and determined upon the merits generally as upon appeal at law or writ of error."
658 So.2d at 525 (emphasis added) (quoting Basnet).
The Court next quotes with approval from Mernaugh v. City of Orlando, 41 Fla. 433, 442, 27 So. 34 (1899), as the first case that explicitly incorporated the "essential requirements of law" language into the certiorari standard:
"The rule established here is that the Supreme Court has power to review and quash, on the common-law writ of certiorari, the proceedings of inferior tribunals when they proceed in a cause without jurisdiction, or when their procedure is essentially irregular and not according to the essential requirements of law, and no appeal or direct method of reviewing the proceeding exists."
658 So.2d at 526 (quoting Mernaugh).
The Court then notes that the standard of review was often not honored in practice, but that beginning in the early 1960's a more consistent practice seemed to emerge restricting the scope of certiorari review in accord with the announced rule. In particular, the Court quotes with approval Judge Wigginton's opinion in State v. Smith, 118 So.2d 792 (Fla. 1st DCA 1960), as an example of an opinion "noted for [its] tight and lucid language in capturing the essence of the appropriate use of the writ [of certiorari],":
"Certiorari is a common-law writ which issues in the sound judicial discretion of the court to an inferior court, not to take the place of an appeal, but to cause the entire record of the inferior court to be brought up in order that it may be determined from the face thereof whether the inferior court has exceeded its jurisdiction, or has not proceeded according to the essential requirements of law. Confined to its legitimate scope, the writ may issue within the court's discretion to correct the procedure of courts wherein they have not observed those requirements of the law which are deemed to be essential to the administration of justice.... Failure to observe the essential requirements of law means failure to accord due process of law within the contemplation of the Constitution, or the commission of an error so fundamental in character as to fatally infect the judgment and render it void. ..."
658 So.2d at 527 (emphasis supplied by the Court in Heggs) (quoting Smith).
The Court also quotes with approval from Chief Justice Boyd's concurring opinion in Jones v. State, 477 So.2d 566, 569 (Fla.1985), as having "captured the essence of the standard" for departure from essential requirements of the law:
"The required `departure from the essential requirements of the law' means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error."
658 So.2d at 527 (emphasis added) (quoting Jones).
The Court then considers and reconciles its prior decisions in Combs v. State, 436 So.2d 93 (Fla.1983), and Education Development Center, Inc. v. City of West Palm Beach Zoning Board of Appeals, 541 So.2d 106 (Fla.1989):
"In Combs we held that a district court's [certiorari] review of an appellate circuit court decision should determine whether there was a `departure from the essential requirements of law.' We emphasized that there must be `a violation of a clearly established principle of law resulting in a miscarriage of justice.' On the other hand, EDC held that a district court's [certiorari] review of an appellate circuit court's decision which reviewed an administrative *612 agency decision should consider whether the `circuit court afforded procedural due process and applied the correct law.'
....
When the above two standards are juxtaposed, we conclude that `applied the correct law' is synonymous with `observing the essential requirements of law.' Therefore, when the Combs and EDC standards are reduced to their core, they appear to be the same."
658 So.2d at 527-30 (emphasis added) (citations omitted).
The Court in Heggs further held that in reviewing a circuit court appellate decision, the district court may not determine whether the final judgment or order reviewed by the circuit court was based on substantial, competent evidence, as this is solely for the circuit court to determine. The Court stated:
"The standard of review for certiorari in the district court effectively eliminates the substantial competent evidence component. The inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law. As explained above, these two components are merely expressions of ways in which the circuit court decision may have departed from the essential requirements of the law."
658 So.2d at 530 (emphasis added).
Finally, the Court approved the decision of the second district court of appeal which was under review "as an excellent example of the correct application of the limited standard of review [on certiorari] available to litigants after they have had the benefit of an appeal in the circuit court" and quoted from the decision as follows:
"In this case, even if we were to conclude that the circuit court's order departed from the essential requirements of the law, we cannot say that such a departure was serious enough to result in a miscarriage of justice. The order did nothing more than reverse a county court's eviction judgment based on a peculiar set of facts. It did not deprive the petitioner of its day in court, nor has it foreclosed the petitioner from seeking eviction of the respondent because of future non-payment of rent. Thus, we are unable to conclude that this is one of `those few extreme cases where the appellate court's decision is so erroneous that justice requires that it be corrected.'"
658 So.2d at 531 (emphasis added) (citations omitted).

II
Applying the above standard of certiorari review to the instant case, I have no trouble in concluding that the appellate court decision of the circuit court herein did not depart from the essential requirements of the law and that the petition for a writ of certiorari should be denied. Clearly, the circuit court both afforded the petitioners procedural due process of law below, and acted well within its jurisdiction, when it reversed on appeal the denial by the Dade County Commission of a re-zoning application; indeed, the petitioners make no argument to the contrary. Moreover, I am unable to discover in the circuit court's opinion the commission of an error so fundamental in character as to fatally infect the judgment and render it void as being a miscarriage of justiceeven if one assumes that the circuit court was in error in its decision below.
The sole basis for the circuit court's decision was that the Dade County Commission's denial of the respondent's rezoning application was not supported by substantial, competent evidence. We clearly have no authority to quash this decision on the ground that we disagree with this determination and feel that the subject denial was supported by substantial, competent evidence. Moreover, the circuit court in its opinion correctly states the standard of review which it must apply in reviewing the denial of the re-zoning application, and does not in any sense state or apply an incorrect rule of law.
More to the point, however, is the fact that no injustice was done to the petitioners in this casean absolute prerequisite for invoking certiorari in this case. Without dispute, the respondent's re-zoning application was consistent with Dade County's Master Plan *613 in that it would permit 360 rental units on a 20 acre tract or 18 units per acrewell within the 25 units per acre for medium density residential use set by the Master Plan. Moreover, Dade County's Planning Department, Building and Zoning Department, and Public Works Department approved the respondent's application after it was scaled back; the site plan, in addition, passed consistency review and concurrency standards under the Master Plan. Finally, at the Commission hearing, a number of land use experts testified to the reasonableness and amenities of the respondent's plan.
The only evidence adduced against the re-zoning application was a number of homeowners in the area who wanted the project scaled back to 13 units per acre; the circuit court decided that the homeowner's testimony was "conclusory and without adequate support," that there was no "emerging trend in the area" for 13 units per acre as urged, and that consequently "the decision below [was] arbitrary and not based on substantial competent evidence"a determination which, as previously stated, we have no authority to review. Moreover, even if the circuit court got it wrong in this analysis as the court concludes in adopting Judge Cope's dissent to the panel opinion, I am unable to say that a miscarriage of justice occurred. The professional staff, the neighborhood study process, the Master Plan analysis, and several land experts fully supported the re-zoning application; the only disagreement came from several landowners in the area and they were willing to accept the plan if it were scaled back by only five units per acre, hardly a drastic disagreement. Plainly, no injustice has been done to the petitioners in this case and consequently, I would deny the petition for a writ of certiorari.
GODERICH, J., concurs.
BASKIN, JORGENSON and GREEN, JJ., recused.
NOTES
[1] The DIC is comprised of various departments and agencies, including the following:

(1) Public Works Department, consisting of a representative of the Highway Planning Division and a representative of the Subdivision Control Division;
(2) Planning Department, consisting of a representative of the Development Planning Division and a representative of the Research Division;
(3) Building and Zoning Department;
(4) Park and Recreation Department;
(5) Environmental Resources Management Department;
(6) Miami-Dade Water and Sewer Authority;
(7) Miami-Dade Police Department;
(8) Fire Department;
(9) Dade County Transportation Administration;
(10) Capital Improvements Division;
(11) Department of Solid Waste Management;
(12) School Board of Dade County; and,
(13) South Florida Water Management District.
33-1303.1(A), Code of Metropolitan Dade County, Florida.
[2] The DIC's report states, in part, as follows:

This residential proposal is well conceived with respect both to the subject property's proximity to significant centers of employment in the West Dade area, and with respect to accessibility to other major employment centers surrounding Miami International Airport. The need for additional affordable housing in this area is apparent and has been documented in the Comprehensive Development Master Plan. Higher density residential development should be encouraged in those areas planned to accommodate such higher density, thus taking advantage of existing and planned infrastructure. Underuse [sic] of such areas promotes urban sprawl.
[3] Blumenthal's attorney explained at the hearing that it would not be economically feasible to build only thirteen dwelling units per acre due to land costs, infrastructure costs, and construction costs.
[4] "[L]aymen's opinions unsubstantiated by any competent facts" do not constitute substantial competent evidence in zoning proceedings. City of Apopka v. Orange County, 299 So.2d 657, 660 (Fla. 4th DCA 1974).
[5] It is not our intention to discourage objecting neighbors from voicing their opinions at Commission hearings.
[*] Editor's Note: Adopted as the opinion of the court on rehearing en banc Feb. 21, 1996.
[1] The participating homeowners are the West Dade Federation of Homeowners Associations, Inc.; Morgan I. Levy, President of the West Dade Federation of Homeowners Associations, Inc.; Russell Geyer; and John H. Bechamps.
[2] According to Exhibit 8-K-L, the segment of Doral Park lying immediately to the east of the proposed apartment site is low density residential, up to 6 units per acre. Exhibit 8-K-L is a Dade County Planning Department map of the West Dade Study Area.

That exhibit shows varying densities at various places in Doral Park, all of which are separated by golf courses or other green space. The Doral Park segment closest to the proposed apartment site is low density.
[3] Counsel mentioned applications by the Gasser Family Trust and by Southeast Bank Corporation. Mag Landea had also been disapproved in its original form, and had later been approved in its 23-unit/13-unit form.
[4] This section of the Dade County Code was read at the County Commission hearing by petitioner Levy.
[5] The only minor factual dispute came with one homeowner's testimony regarding property values in the area. The developer's counsel raised a question about that. The claimed diminution of property values in the area is not, however, material to any issue in this case.
[6] Where the circuit court sitting in an appellate capacity applies the incorrect law, it is proper for the reviewing court to examine the facts in light of the correct legal standard. See Scott v. Anderson, 405 So.2d 228, 237 (Fla. 1st DCA 1981), review denied, 415 So.2d 1359, 1361 (Fla. 1982).
[7] Although it did not happen in this case, a citizen can testify about a zoning trend so long as the citizen states the facts on which the citizen relies.
[8] This portion of the majority opinion is, as the majority itself recognizes, dictum. The dictum will, however, cause much mischief in other cases because it suggests, incorrectly, that citizen testimony in zoning matters should simply be disregarded.