772 So.2d 24 (2000)
MIAMI-DADE COUNTY, a political subdivision of the State of Florida, Petitioner,
v.
Ramon REYES and Ana Tamargo, his wife, Respondents.
No. 3D99-3141.
District Court of Appeal of Florida, Third District.
August 23, 2000.
Rehearing Denied December 13, 2000.
*26 Robert A. Ginsburg, Miami-Dade County Attorney, and Roy Wood, Assistant County Attorney, for petitioner.
Alvarez & Garcia-Montes, and Gustavo Garcia-Montes, Miami, for respondents.
Before JORGENSON and SORONDO, JJ., and NESBITT, Senior Judge.
SORONDO, J.
Miami-Dade County (County) seeks certiorari review of a circuit court opinion quashing a final order of a Miami-Dade Water and Sewer Department (Department) hearing officer. We grant the County's petition, quash the decision of the circuit court and remand the matter for a new hearing.
Ramon Reyes (Reyes) was a residential customer of the Department for his water and sewage needs. Reyes received a water bill from the County in the amount of $2,300.55 for the three month period of December 31, 1996 to March 31, 1997. The meter read that Reyes had used approximately 364,324 gallons of water, a 1,800% increase over the usual 20,196 gallons consumed by Reyes and a 2,000% increase in the cost of his water bill from the usual $114.55 for the same period the previous year.
On April 2, 1997, the County initiated an investigation regarding Reyes's high water bill. The County investigator found no leak at the meter. On April 10, 1997, Reyes hired a certified plumber to inspect his home. The plumber inspected all bathrooms, hoses, and valves, as well as the hot water heater. No leaks were found and the report was turned over to the County. On May 9, 1997, a certified test on the meter was performed at Reyes's request. Due to circumstances beyond his control, Reyes was not present. The meter was found to be within the acceptable standards for accuracy for measuring the water flow through the meter. The meter was then sent to the manufacturer in Pennsylvania for another test, which Reyes could also not attend, and was again found to be within the acceptable standards for accuracy. Reyes then filed a written request for a formal hearing before a hearing officer of the County's Department to challenge the validity of the water bill.
On October 24, 1997, the County's Department sent Reyes a letter setting the *27 date for the hearing to be November 14, 1997. The letter explained in pertinent part the guidelines for the presentation of evidence at the hearing:
In most cases, the Customer of the Department has requested a Certified Test to be performed on the water meter installed at the Customer's service address. When the test results indicate that the meter is registering no greater than 102% of the actual water passing through the meter at maximum test flow, a very strong presumption is created in favor of the accuracy of its meters and records; however, after water has passed through an accurate measuring device, such as a meter, the Department cannot be held responsible for making a determination as to how the water was used or may have been lost through some leakage or other means.
... The mere fact that the Customer's bill increased substantially without apparent explanation cannot be considered grounds for relief if the meter was found to be accurate. Demonstration that bills of the Customer's neighbors, family, friends, etc, or prior or subsequent bills of the same Customer that were much lower will be given little weight by the Hearing Officer. Pursuant to Department Rules and Regulations, meter readings shall serve as prima facie evidence of the quantity of water delivered to the customer.
(emphasis added).
Reyes testified at the November 14, 1997 hearing that only he and his wife lived in his house and that his house contained no pool and no Jacuzzi that could explain the sudden rise in consumption. Reyes also testified that once a new meter was installed at his residence, his water bills returned to normal consumption levels. Reyes was questioned by the Hearing Officer, in pertinent part, as follows:
[Hearing Officer]: You didn't paint the house, have any construction done, you didn't lay tile, pressure cleaning?
[Reyes]: No construction, no visits from a 1,000 people, no visits from nobody. And as a matter of fact at that time, because of my work I had to travel 50% of my time. So I even wasn't around the house most of the time.
[Hearing Officer]: But your wife was there?
[Reyes]: Yes.
[Hearing Officer]: So it's not possible that someone could have attached a hose to one of your outside faucets and used the water knowing that you weren't there most of the time?
[Reyes]: To my knowledge, no. I have a neighbor who is always around and is always checking up on my house. He always tells me that. Of course, if I'm not a 100% in the house, I am not going to say there's no possibility. But, you know, like I said we do have neighbors that would have noticed a tank truck or something parked stealing the water to justify by that mean.
[Hearing Officer]: Did you have any road work, any work done on the road in front of your house?
[Reyes]: None, in the last, every [sic] since I bought that home.
[Hearing Officer]: When the high bill investigator went out there, that constant registration would look like a toilet was hung up. Is there more than one bathroom?
[Reyes]: There are three bathrooms inside the house. We use all three so we should have noticed any kind of water movement and at the same time, that's the reason why I called in the investigator or the plumber, or even the Miami-Dade Department, I even called here to request somebody to come and make the check.
On January 5, 1998, the Hearing Officer ruled in favor of the County finding there was no evidence to support Reyes's contention that he did not consume the 364,324 gallons of water.
*28 Reyes filed a petition to the circuit court for a writ of certiorari. The circuit court granted certiorari and quashed the decision of the Hearing Officer, finding that the evidentiary rules of the hearing violated Reyes's due process rights and that there was no competent, substantial evidence to support the decision of the County's Hearing Officer. The County then petitioned this Court for a writ of certiorari claiming the circuit court departed from the essential requirements of the law by re-weighing the evidence.
"Common-law certiorari has been made available to review quasi-judicial orders of local agencies and boards not made subject to the Administrative Procedure Act when no other method of review is provided." Haines City Community Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995); see also De Groot v. Sheffield, 95 So.2d 912, 915-16 (Fla.1957); Valenzuela v. Valenzuela, 648 So.2d 741 (Fla. 3d DCA 1994). Upon granting a writ of certiorari, a circuit court is limited in the scope of its review to three issues. The circuit court must determine if the administrative hearing afforded all participants procedural due process, whether the essential elements of the law have been observed, and if the judgment is supported by competent, substantial evidence. See Haines, 658 So.2d at 530; City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla.1982); Campbell v. Vetter, 392 So.2d 6, 7-8 (Fla. 4th DCA 1981). The circuit court, however, is not free to re-weigh or re-evaluate the evidence presented at the administrative hearing or substitute its judgment for that of the agency. See Haines, 658 So.2d at 530; Education Dev. Center, Inc. v. City of West Palm Beach Zoning Bd. of Appeals, 541 So.2d 106, 108 (Fla.1989); State Beverage Dep't. v. Ernal, Inc., 115 So.2d 566, 568 (Fla. 3d DCA 1959).
Review in the district court is more limited. "The inquiry is limited to whether the circuit court afforded procedural due process and whether the circuit court applied the correct law." Haines, 658 So.2d at 530; see also City of Miami Beach v. Robbins, 702 So.2d 1329, 1330 (Fla. 3d DCA 1997); Metropolitan Dade County v. Blumenthal, 675 So.2d 598, 608-9 (Fla. 3d DCA 1995)(en banc).
The circuit court based its decision to quash the Hearing Officer's finding on the fact that it "[found] it difficult to accept the reasonableness of [the County's] decision when it has taken note of the erratic levels of water consumption and its cost..." The circuit court relied on the standard that competent substantial evidence is the type which a reasonable mind would accept as adequate to support the conclusion reached. See De Groot, 95 So.2d at 916. However, De Groot clearly warns against circuit courts re-weighing evidence. See id. It is a departure from the essential requirements of law for a circuit court to re-weigh evidence. See Metropolitan Dade County Bd. of County Comm'rs v. Dusseau, 725 So.2d 1169, 1171 (Fla. 3d DCA 1998); Blumenthal, 675 So.2d at 609.
The circuit court discounted the Hearing Officer's finding because it could not find a rational use for the astronomical amount of water for which Reyes was billed given the lack of a pool, leaks, or flooding on Reyes's property. It was not for the circuit court, however, to decide if there was a possible use for the amount of water and base its finding on such. The circuit court's review should have been limited to whether the evidence admitted in the record of the administrative hearing, such as meter accuracy and billing history, constituted competent, substantial evidence that the bill was valid. In an administrative hearing, the hearing officer is a trier of fact and "he or she is privileged to weigh and reject conflicting evidence." San Roman v. Unemployment Appeals Comm'n, 711 So.2d 93, 95 (Fla. 4th DCA 1998). When the facts are such as to give an agency the choice between alternatives, it is up to that agency to make the choice, not the circuit court. See Blumenthal, 675 So.2d at 606. However, we do agree with *29 the circuit court that the County's evidentiary rules for the hearing violated Reyes's due process rights.
While "the concepts of due process in an administrative proceeding are less stringent than in a judicial proceeding, they nonetheless apply." A.J. v. State, Dep't. of HRS, 630 So.2d 1187, 1189 (Fla. 2d DCA 1994); see also Hadley v. Department of Admin., 411 So.2d 184, 187 (Fla. 1982)("In such proceedings, it is sufficient if the accused ... has reasonable opportunity to defend against attempted proof of such charges...."). This opportunity to be heard must be meaningful. See Metropolitan Dade County v. Sokolowski, 439 So.2d 932, 934 (Fla. 3d DCA 1983); Rucker v. City of Ocala, 684 So.2d 836, 841 (Fla. 1st DCA 1996) ("To qualify under due process standards, the opportunity to be heard must be meaningful, full and fair, and not merely colorable or illusive (sic)."). "Due process envisions a law that hears before it condemns, proceeds upon inquiry, and renders judgment only after proper consideration of issues advanced by adversarial parties." Scull v. State, 569 So.2d 1251, 1252 (Fla.1990).
Miami-Dade County Code section 32-96, Evidence of water and sewer service, states:
The water and sewer services rendered by the Department, as measured by water meters, shall be prima facie evidence of the quantity of water delivered to the customer and of sewage collected from the customer.
(Emphasis added).
The County's guidelines for evidence at hearings, as stated in its October 24, 1997 letter to Reyes, violates this unambiguous mandate in section 32-96 by stating that when the meter is found to be within acceptable standards of accuracy, a "very strong presumption is created" in favor of the accuracy of the water bill. "Prima facie evidence is evidence sufficient to establish a fact unless and until rebutted." State v. Kahler, 232 So.2d 166, 168 (Fla.1970). Prima facie evidence does not amount to a legal presumption. The natural evidence that an average consumer would have to challenge the accuracy of a water bill and attempt to rebut the County's evidence, such as much lower prior and subsequent billing history, testimony from family and friends on water consumption at the residence, and an inspection by a plumber, are automatically given "little weight" by the Hearing Officer, according to the October 24, 1997 letter. Given the County's discounting of almost all evidence a customer could produce, short of hiring an expert in engineering,[1] the County's evidentiary rules take what should be prima facie evidence of water consumption, the meter accuracy, and raise it to the level of a virtual irrebuttable presumption in favor of the County. If Reyes had a water bill charging him for 1,000,000 gallons, what evidence could he possibly present that would be given serious weight to challenge such an astronomical bill if the County meter tested within the acceptable standards of accuracy?[2] These procedural rules regarding the weighing of evidence deny Reyes a reasonable, meaningful, full and fair opportunity to challenge his water bill. Accordingly, Reyes has been denied *30 his due process rights by the County's administrative hearing.
The findings of administrative hearing officers are to be given deference, but not at the expense of due process. While the circuit court erred in re-weighing the evidence, it was absolutely correct in holding that the County's evidentiary procedures amounted to an irrebutable presumption which was virtually impossible for Reyes to overcome. A consumer should not be held hostage to an astronomically high water bill merely because the meter tests within acceptable standards and be left defenseless at a hearing on the matter. This is particularly important in a case such as this, where the amount in question, $2,300.55, can be financially devastating. To most people, an unexpected bill of this magnitude can obliterate all or a significant part of their savings, or force them to borrow the money necessary to maintain their water service.
We quash the decision of the circuit court and remand the case with directions for the Department to conduct another hearing wherein the accuracy of the meter will be merely prima facie evidence of the validity of the water bill, in accordance with the Miami-Dade County Code, and other evidence regarding water consumption and past and subsequent billing history will be considered on an equal footing and then given the weight it deserves.[3]
Certiorari granted.
NOTES
[1] It is unreasonable to expect that the average consumer would have the financial resources to hire independent expert witnesses to contest the meter's readings. To require such testimony would set the price of vindication well beyond the cost of paying the bill.
[2] In response to the consumer's argument that consumption of the 364,324 gallons alleged would have flooded the property, the County argued at oral argument that no flooding would result if, for example, the water were allowed to run continuously into a bathtub and down the drain. This argument, we suppose, would be the same if the amount of water involved were one or two million gallons. Indeed, the argument would only fail where the consumer could establish through expert testimony that an open water faucet, allowed to run without interruption for a three month period, could not possibly consume the amount of water billed. Clearly, the consumer would never prevail.
[3] We are confident that the Hearing Officers designated by the Department will serve impartially in that capacity and not as bill collectors. Any future indications to the contrary, however, would raise grave Constitutional issues which we trust we will never need to reach.