857 So.2d 202 (2003)
CITY OF HIALEAH GARDENS, Petitioner,
v.
MIAMI-DADE CHARTER FOUNDATION, INC., and Luis Machado, Respondents.
No. 3D03-1056.
District Court of Appeal of Florida, Third District.
July 23, 2003.
Rehearing and Rehearing Denied October 17, 2003.
Citrin & Walker and J. Frost Walker, III, Coral Gables, for petitioner.
Tannebaum, Plans & Weiss and Daniel A. Weiss, for respondents.
Before FLETCHER, and WELLS, and NESBITT, Senior Judge.
Rehearing and Rehearing En Banc Denied October 17, 2003.
WELLS, Judge.
The City of Hialeah Gardens petitions for certiorari review of a decision of the circuit court, appellate division, quashing *203 the City's denial of an application for a special exception use resolution. We grant the petition and quash the circuit court's decision.
Luis Machado and the Miami-Dade Charter Foundation, Inc. (collectively "Machado") sought a permit from the City of Hialeah Gardens for a "special exception use" resolution permitting the construction and operation of a charter elementary school on approximately 2.1 acres of property fronting Northwest 103rd Street, a main highway artery and extension of West 49th Street in neighboring Hialeah. Under the City's code, the use of this property for a school, due to its location in a BU zone, is authorized upon adoption of a resolution granting a special exception use, which must be found by the City Council to comply with the following requirements:
(1) The use is a permitted special use as set forth in the special exception uses for that district.
(2) The use is so designed, located and proposed to be operated that the public health, safety, welfare and convenience will be protected.
(3) The use will not cause substantial injury to the value of other property in the neighborhood where it is to be located.
(4) The use will be compatible with adjoining developments and the proposed character of the district where it is to be located.
(5) Adequate landscaping and screening is provided as required in this chapter, or as otherwise required.
(6) Adequate off-street parking and loading is provided. Ingress and egress is designed so as to cause minimum interference with traffic on abutting streets and the use has adequate frontage on a public or approved private street.
(7) The use conforms with all applicable regulations governing the district where located, except as may otherwise be determined for planned unit developments.
§ 78-132, City of Hialeah Gardens Code.
In the course of the three public hearings held on the matter, Machado presented two site plans and introduced both lay and expert testimony in support of the request. The City's professional staff explained why they could not support the placement of an elementary school on what was characterized as one of the busiest, most congested roadways in Miami-Dade County. Ultimately, the City rejected Machado's application.
The City's decision was overturned by the circuit court, appellate division, primarily for two reasons: first, because the City's testimony addressing "the traffic risks associated with placing a school on a well traveled thoroughfare" was "not based on specific expert competent evidence," and second, because the testimony of staff members, while "cast[ing] doubt" on the evidence presented by Machado, did not overcome Machado's evidence.
Our scope of review of the circuit court's decision is limited to determining whether the circuit court applied the correct law or legal standard, that is, whether it departed from the essential requirements of the law. See Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 530 (Fla.1995); City of Deerfield Beach v. Vaillant, 419 So.2d 624, 626 (Fla. 1982); Metropolitan Dade County v. Blumenthal, 675 So.2d 598, 608-09 (Fla. 3d DCA 1995). We agree with the City that the circuit court applied the wrong law or incorrect legal standard, first, by rejecting the City's decision as not being "based on specific expert competent evidence," and second, by re-weighing the evidence, and in the process, ignoring the evidence supporting the City's decision. See Vaillant, *204 419 So.2d at 626; see also Dusseau v. Metro. Dade County Bd. of County Comm'rs, 794 So.2d 1270, 1275 (Fla.2001); Fla. Power & Light Co. v. City of Dania, 761 So.2d 1089, 1093 (Fla.2000). We therefore exercise our certiorari jurisdiction because the circuit court violated clearly established principles of law resulting in a substantial miscarriage of justice. See Ivey v. Allstate Ins. Co., 774 So.2d 679, 682-83 (Fla.2000).

A.
Once a special exception applicant demonstrates consistency with a zoning authority's land use plan and meets code criteria, the decision-making body may deny the request only where "the party opposing the application (i.e., either the agency itself or a third party) ... show[s] by competent substantial evidence that the proposed exception does not meet the published criteria." Fla. Power & Light Co., 761 So.2d at 1092; see Irvine v. Duval County Planning Comm'n, 495 So.2d 167 (Fla.1986); Jesus Fellowship, Inc. v. Miami-Dade County, 752 So.2d 708 (Fla. 3d DCA 2000). In this context, competent evidence is evidence sufficiently relevant and material to the ultimate determination "that a reasonable mind would accept it as adequate to support the conclusion reached." DeGroot v. Sheffield, 95 So.2d 912, 916 (Fla.1957). Substantial evidence is evidence that provides a factual basis from which a fact at issue may reasonably be inferred. Id.; Blumenthal, 675 So.2d at 608; see also Pollard v. Palm Beach County, 560 So.2d 1358, 1359-60 (Fla. 4th DCA 1990) ("evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the `substantial' evidence should also be `competent.'").
Under this standard, generalized statements in opposition to a land use proposal, even those from an expert, should be disregarded. See Div. of Admin. v. Samter, 393 So.2d 1142, 1145 (Fla. 3d DCA 1981) ("[n]o weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning"). However, contrary to the circuit court's decision, relevant fact-based statements, whether expert or not, are to be considered. See Blumenthal, 675 So.2d at 607 ("[u]nder the correct legal standard, citizen testimony in a zoning matter is perfectly permissible and constitutes substantial competent evidence, so long as it is fact-based"); see also Metro. Dade County v. Sportacres Dev. Group, 698 So.2d 281, 282 (Fla. 3d DCA 1997)(holding that materials in the record in conjunction with neighbors' testimony could constitute competent substantial evidence). Here, the Chief of Police, the Director of Public Works, and the Chief Zoning Official, gave specific fact-based reasons for their recommendations that the application be rejected.[1] Their observations were relevant, *205 material, and fact-based and not merely, "generalized statement[s] of opposition." Blumenthal, 675 So.2d at 607; see Jesus Fellowship, 752 So.2d at 709; Miami-Dade County v. Walberg, 739 So.2d 115, 117 (Fla. 3d DCA 1999)(citing Blumenthal, 675 So.2d at 607). In sum, these witnesses were "no group of `Apopka Witnesses,' i.e., local residents who simply wished the facility to be established elsewhere" but were experts providing fact-based, relevant and material evidence. Blumenthal, 675 So.2d at 608, quoting City of Apopka v. Orange County, 299 So.2d 657 (Fla. 4th DCA 1974); see also Allapattah Cmty. Ass'n v. Miami, 379 So.2d 387, 393 (Fla. 3d DCA 1980)(citing to "expert opinion" of planning department).
Inherent in the circuit court's conclusion that the City's denial had to be based on "specific expert competent testimony," is the incorrect assumption that the expert testimony of those opposing Machado's application had to be distilled from the experts' own studies or reports. This is incorrect. The fact that these professionals did not submit, as the circuit court noted, their own "countervailing" charts, statistical studies or other materials did not diminish the sufficiency of their testimony.
The "facts" upon which such testimony rests may derive from relevant portions of the record or from other relevant factual information detailed in the application itself. See Sportacres Dev. Group, 698 So.2d at 282 (holding that "the County Commission had access to a record which contained maps, reports and other information which, in conjunction with the testimony of the neighbors, if believed by the Commission, constituted competent substantial evidence").
Here, the testifying staff members utilized their professional experiences and personal observations, as well as Machado's application, site plan, and traffic study, as the basis for their testimony. These record materials, along with the staff presentations, combined to provide evidence "sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached." DeGroot, 95 So.2d at 916. Ignoring this standard constituted a departure from the essential requirements of the law.

B.
A circuit court may not re-weigh the evidence. In reviewing local administrative action, circuit courts are constrained to determine only whether the agency's determination is supported by competent substantial evidence. A circuit court may not re-weigh the evidence to substitute its judgment for that of the agency by determining whether the evidence shows that the application was deficient:
At the circuit court level, a solitary judge quashed the Commission decision, ruling as follows: "The [homeowners] failed to show by competent substantial evidence that such use [was inconsistent with the Dania Code]" (emphasis added). This ruling was improper. Under Vaillant, the circuit court was constrained to determine simply whether the Commission's decision was supported by competent substantial evidence. The circuit court instead decided anew whether the homeowners had shown by competent *206 substantial evidence that the proposed use was deficient. In other words, a single judge conducted his own de novo review of the application and, based on the cold record, substituted his judgment for that of the Commission as to the relative weight of the conflicting testimony. The circuit court thus usurped the fact-finding authority of the agency.
City of Dania, 761 So.2d at 1093; see Vaillant, 419 So.2d at 626.
Re-weighing of the evidence is precisely what the circuit court did when it held:
At best, the testimony by Hialeah Gardens' staff members cast doubt upon the conclusions and evidence submitted by Machado....
* * * *
The opponents of the special exception use did not show, by competent substantial evidence, that the proposed use was adverse to the public interest.
Consideration of the fact-based testimony of the Director of Public Works and the Chief of Police, as well as other record materials, including the pretzel-like diagram of the proposed site and the memo of the Chief Zoning Officer, was, as the Florida Supreme Court has confirmed, where the circuit court's analysis should have ended:
We reiterate that the "competent substantial evidence" standard cannot be used by a reviewing court as a mechanism for exerting covert control over the policy determinations and factual findings of the local agency. Rather, this standard requires the reviewing court to defer to the agency's superior technical expertise and special vantage point in such matters. The issue before the court is not whether the agency's decision is the "best" decision or the "right" decision or even a "wise" decision, for these are technical and policy-based determinations properly within the purview of the agency. The circuit court has no training or experienceand is inherently unsuitedto sit as a roving "super agency" with plenary oversight in such matters.
The sole issue before the court on first-tier certiorari review is whether the agency's decision is lawful. The court's task vis-a-vis the third prong of Vaillant is simple: The court must review the record to assess the evidentiary support for the agency's decision. Evidence contrary to the agency's decision is outside the scope of the inquiry at this point, for the reviewing court above all cannot reweigh the "pros and cons" of conflicting evidence. While contrary evidence may be relevant to the wisdom of the decision, it is irrelevant to the lawfulness of the decision. As long as the record contains competent substantial evidence to support the agency's decision, the decision is presumed lawful and the court's job is ended.
Dusseau, 794 So.2d at 1275-76 (citation omitted).
In this case, the circuit court substituted its judgment as to the weight of the evidence for that of the City Council, which is contrary to the law and synonymous with failing to observe the essential requirements of the law. See Blumenthal, 675 So.2d at 609; see also City of Dania, 761 So.2d at 1093; Heggs, 658 So.2d at 530.
Accordingly, we grant the Petition for Certiorari, quash the decision of the circuit court, and return this case to the circuit court for final determination consistent with this opinion. See City of Dania, 761 So.2d at 1093-94; see also Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003)("district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting *207 in a miscarriage of justice"); Blumenthal 675 So.2d at 608; Maturo v. City of Coral Gables, 619 So.2d 455, 457 (Fla. 3d DCA 1993); Orange County v. Lust, 602 So.2d 568, 572 (Fla. 5th DCA 1992); Herrera v. City of Miami, 600 So.2d 561, 563 (Fla. 3d DCA 1992); City of Ft. Lauderdale v. Multidyne Med. Waste Mgmt. Inc., 567 So.2d 955, 958 (Fla. 4th DCA 1990); City of Deland v. Benline Process Color Co., 493 So.2d 26, 28 (Fla. 5th DCA 1986); Bd. of County Comm'rs of Pinellas County v. City of Clearwater, 440 So.2d 497, 499 (Fla. 2d DCA 1983); Town of Mangonia Park v. Palm Beach Oil, Inc., 436 So.2d 1138, 1139 (Fla. 4th DCA 1983).
NOTES
[1] Based on personal observation and experience and from a review of Machado's site plans, the Director of Public Works testified that Machado's plan, which called for traffic entering the school property from Northwest 103rd Street to cross over the traffic attempting to exit following drop-off, back onto Northwest 103rd Street, would cause "stacking" of traffic in the westbound lane of Northwest 103rd street.

The Chief of Police testified, based on his 27 years as a policeman and observations of behavior during drop-off and pick-up at other Hialeah Gardens schools, that placing a school at this site was dangerous.
The Chief Zoning Officer's memo concluded that she, as well as the Public Works Director and Chief of Police all agreed:
[t]he additional vehicles related to six hundred (600) students and forty-two (42) staff members during peak hours would cause extreme traffic congestion. Individuals making a left or right turn into the school would back up traffic in both directions on NW 103rd Street. In addition, the exiting of the school onto 103rd Street would cause chaos.