WELLS, Chief Judge.
The Village of Palmetto Bay petitions for certiorari relief from an order of the circuit court appellate division granting a motion to enforce its mandate in Palmer Trinity Private School, Inc. v. Village of Palmetto Bay, 18 Fla. L. Weekly Supp. 342a (Fla. 11th Jud.Cir.Ct. Feb. 11, 2011).[1] Both Palmetto Bay and Palmer Trinity maintain, and we agree, that this order is subject to “first tier” certiorari review. See Ramirez v. United Auto. Ins. Co., 67 So.3d 1174, 1175-76 (Fla. 3d DCA 2011) (confirming that a “first ruling on [a] question” by an appellate division of a circuit court is properly reviewed by the district court as a “first tier” appellate review); see also City of Indian Rocks Beach v. Tomalo, 834 So.2d 341, 341 (Fla. 2d DCA 2003) (treating a petition for second tier certiorari review of an order enforcing a circuit court appellate division mandate as an appeal).
To justify certiorari relief, a petition must demonstrate a departure from the essential requirements of law resulting in a material injury that cannot be remedied on appeal. See Fortune Int’l Hospitality, LLC v. M Resort Residences Condo. Ass’n, 77 So.3d 741, 743 (Fla. 3d DCA 2011) (citing Martin-Johnson, Inc. v. Savage, 509 So.2d 1097 (Fla.1987)). A departure from the essential requirements of the law that will justify issuance of this extraordinary writ requires significantly more than a demonstration of legal error: [T]he departure from the essential requirements of the law necessary for the issuance of a writ of certiorari is something more than a simple legal error. A district court should exercise its discretion to grant certiorari review only when there has been a violation of a clearly established principle of law resulting in a miscarriage of justice.
Allstate Ins. Co. v. Kaklamanos, 843 So.2d 885, 889 (Fla.2003) (citing Ivey v. Allstate Ins. Co., 774 So.2d 679, 682 (Fla.2000)). *21 As Chief Justice Boyd made clear in Jones v. State, 477 So.2d 566, 569 (Fla.1985) (Boyd, C.J., concurring specially):
The required “departure from the essential requirements of law” means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error.
See also Haines City Cmty. Dev. v. Heggs, 658 So.2d 523, 527-28 (Fla.1995) (observing that Chief Justice Boyd in Jones had “captured the essence of the standard” for determining whether a departure from the essential requirements of the law existed).
Under these parameters, the order of the circuit court appellate division granting Palmer Trinity’s motion to enforce its prior mandate neither merits nor permits issuance of the writ sought. The circuit court appellate division did no more than order compliance with its now long final decision in Palmer Trinity Private School, Inc., 18 Fla. L. Weekly Supp. at 342a. There is no question that it is within the circuit court’s authority to enforce its decisions and orders. See Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp., 328 So.2d 825, 827 (Fla.1975) (observing generally that a court may “take any steps or issue any appropriate writ necessary to give effect to its judgment”). The order itself does not then constitute a departure from the essential requirements of the law.
The compliance mandated by the order also does not constitute a departure from the essential requirements of the law. The order (or opinion) being enforced here struck portions of a zoning resolution addressing Palmer Trinity’s special exception request to expand its school and to increase its student enrollment from 600 to 1150 students. The resolution being reviewed “approved” Palmer Trinity’s special exception request for an increase in its student enrollment to 1150 but then limited that approval to permit only 900 students:

Section 4. Order.

A. The Council, pursuant to section 33-311(A)(7), and 33-151, et seq., of the Miami Dade County Code as applied by the Village, approves with conditions ... Applicants request[ ] for a special exception ... for ... [an increase in] number of students [to 1150] as to the plans entitled Palmer Trinity School Campus Master Plan....
B. The Village Council conditions ... the special exception as follows:
[[Image here]]
3. The request to increase the nonpublic school number of students to 1150 is denied. The condition to allow expansion to 900 students is granted.
(Resolution No. 2010-48 adopted May 17, 2010) (some emphasis added).
In a thorough and well reasoned opinion on first tier certiorari review, the appellate division of the circuit court struck the 900 student condition or “cap” leaving approval of the 1150 special exception request standing:
(PER CURIAM) This appeal arises out of the adoption of Zoning Resolution No. 2010-48 (the “Resolution”) by the Village of Palmetto Bay (the “Village”). Petitioner, Palmer Trinity Private School, Inc. (“Palmer Trinity”), seeks by way of certiorari review to quash and remove two provisions incorporated into Condition 4.4 of the Resolution, specifically: (1) the cap on the permissible number of students at the school at 900; and (2) the imposition of a thirty-year (30) prohibition on the filing of any ap *22 plications for development approvals on the school’s 55-acre site. We have jurisdiction pursuant to Article V, Section 5, Florida Constitution, and Rules 9.030(c) and 9.100 of the Florida Rules of Appellate Procedure.
Palmer Trinity argues that the above provisions are unlawful and should be quashed and removed from the Resolution in that: (1) the cap on the number of students permitted at the school was arbitrary, not supported by competent substantial evidence, and departed from the essential requirements of law; and (2) the thirty-year prohibition on future development applications violated Palmer Trinity’s due process rights because it constituted a de facto moratorium for which neither notice nor opportunity to be heard was given, that the Village departed from the essential requirements of law in approving the prohibition, and that the Village failed to support the thirty-year prohibition with substantial competent evidence.
The Village disagrees and seeks to dismiss Palmer Trinity’s Petition. For the reasons set forth below, we QUASH the two provisions contained in the Resolution, as set forth above, adopted by the Village and REMAND to the Village with instructions to conduct further proceedings on this matter in accordance with this decision.

Procedural and Factual Background

Palmer Trinity has owned and operated a private school on 22.5 acres of land [now] located within the Village (“Parcel A”) for almost five decades. In 1988, Palmer Trinity applied for and obtained approval of a modification of its site plan for the purpose of increasing its enrollment to 600 students. In 2003, Palmer Trinity purchased an additional 32.5 acres also located within the Village
(“Parcel B”) that was zoned half Agricultural (“AU”) and half Estate Single Family per Five Acres (“EU-2”). Parcel B had an Estate Density Residential (“EDR”) future land use designation, allowing for less than 2.5 dwelling units per acre. In 2006, Palmer Trinity filed an application (the “Application”) under the Miami-Dade County Code to rezone Parcel B to Estate Modified Single Family allowing for one home per 15,000 square feet (“EU-M”). As part of the Application, Palmer Trinity also sought a special exception to increase the student enrollment from 600 to 1400 and certain variances concerning further development on both Parcel A and B. As a result of the incorporation of the Village as a municipality, the Application was transferred from the County to the Village.
In 2008, the Village held a hearing on the Application. Consideration of the rezoning request was bifurcated from the other requests in the Application. At the 2008 hearing, the Village adopted Ordinance 08-06 denying the requested rezoning. Palmer Trinity appealed this denial in a petition for certiorari review to the Circuit Court, acting in its appellate capacity, which upheld, without opinion, the Village’s decision. Palmer Trinity then took an appeal to the Third District Court of Appeal which reversed the Circuit Court, thereby overturning the Village’s denial of the rezoning request. See Palmer Trinity Private School, Inc. v. Village of Palmetto Bay, 31 So.3d 260 (Fla. 3d DCA 2010) (“Palmer F’).
After the Third District issued the decision in Palmer I, Palmer Trinity revised its plans, eliminating some of the previously requested non-use variances and reducing its requested student enrollment from 1400 to 1150. Palmer Trinity also voluntarily offered to expand its *23 student population from 600 to 1150 in gradual increments over a fifteen year period. In addition, the proposed site plan was modified to reflect the reduced student enrollment request of 1150, the proposed new development on Parcel B was redesigned and relocated toward the center, setbacks were increased and additional landscaping was added.
On April 28, 2010, the Village conducted a public hearing on the first reading of the rezoning component of the Application. On May 4, 2010, the Village conducted a public hearing on second reading of the rezoning request and approved the rezoning by adopting Ordinance 2010-09. Also at that hearing, the Village heard the request for the special exceptions and site plan modification components of the Application. Prior to the hearing, the professional staff of the Village (the “Village Staff’) reviewed the Application and recommended approval with certain conditions (the “Recommendation”). The ... Village Staff specifically recommended that Palmer Trinity’s request for a special exception to expand the school onto Parcel B and to increase the student enrollment from 600 to 1150 be approved. The 900 number, which the Village later adopted, was not mentioned in the Recommendation.
[[Image here]]
At the May 4, 2010 hearing, the Village’s Planning Director (the “Director”) presented the Recommendation.... With respect to the 1150 student cap on enrollment, the Village’s expert traffic consultant, Joseph Corradino, reviewed the traffic study included in Palmer Trinity’s Application and recommended approval, finding that, based on 1150 students, the Application satisfied the relevant traffic level of service standards.
[[Image here]]
The Village Attorney presented an Overview of Zoning Law as a guide to the Village Council. The County Manager also engaged special council who addressed the Village Council regarding their duties and obligations as quasi-judicial officers. The attorney for Concerned Citizens of Old Cutler, Inc. (“CCOCI”) and Betty Ingram, Interve-nors, presented argument and testimony from several individuals and introduced, Mr. Mark Alvarez, a planner, as an expert. Other individual witnesses spoke both for and against the Application. The Village Council then allowed Palmer Trinity an opportunity for rebuttal.
At the conclusion of the evidentiary portion of the hearing, the Village Council began its deliberations. Several amendments to the conditions recommended by the Village Staff were made. Council Person Stanczyk made a motion to reduce the number of students permitted to 900. This was the first time the number 900 was ever mentioned at the public hearing or in the entire record preceding the public hearing. Thereafter, the Mayor and Council Person Stanczyk had a brief discussion as to whether the 900 number was arbitrary. At the conclusion of the hearing on May 4, 2010, the Village adopted the Resolution with conditions, including the reduction in the number of students from 1150 to 900, with Council Member Stanczyk voting against. The only modification to the language of the version of Condition 4.4 contained in the Recommendation to the language in the version of Condition 4.4, as included in the Resolution, was the reduction in the number of students permitted from 1150 to 900....
Subsequent to the Village’s adoption of the Resolution, Palmer Trinity filed its *24 timely Petition to invoke this Court’s jurisdiction.

Conclusions of Law

First tier certiorari review of a quasi-judicial zoning decision, such as the Resolution at issue here, is a matter of right. Miami-Dade County v. Omni-point Holdings, Inc., 863 So.2d 195, 198 (Fla.2008). A three-part standard governs this Court’s review: (1) whether procedural due process is accorded; (2) whether the essential requirements of law have been observed; and (3) whether the administrative findings and judgment are supported by competent substantial evidence. Id. at 199.
[[Image here]]

B. The 900 Student Cap on Enrollment

Palmer Trinity argues that the 900 student cap contained in Condition 4.4 of the Resolution is not supported by competent substantial evidence and constitutes a departure from the essential requirements of law. We agree. The record contains no mention of the 900 number at the May 4, 2010 hearing until after the close of public comment when the Mayor, Council, and Village Counsel had the following exchange:
COUNCIL MEMBER STANCZYK: Yeah and I’m having a little trouble again. The original student number that was listed as a recommendation was 1150, and I would like to reduce it to 900, staged incrementally over the entire term of the project. I’d like to make that as a motion.
MAYOR FLINN: That’s a tough one. I mean, I don’t know how we can just arbitrarily do that, but—
COUNCIL MEMBER STANCZYK: Well, 1150 was an arbitrary number. MAYOR FLINN: Well, 1150 is what they voluntarily dropped to, but—
COUNCIL MEMBER STANCZYK: Well—
MAYOR FLINN: But, anyway, is there a second for that?
VICE MAYOR PARISER: I’ll second it.
MAYOR FLINN: All right, it’s been seconded. Any discussions on it? COUNCIL MEMBER FELLER: Read the motion.
MAYOR FLINN: Reduce to 900 students.
COUNCIL MEMBER FELLER: In discussion by — I had gotten a number, by state number or by density or some numbers. Theoretically, what is the maximum the school would be allowed to by the total acreage? Is there such a thing, Eve?
MS. BOUTSIS: Under the special exception process, they have to meet certain numbers. The answer is over 2,000.
COUNCIL MEMBER FELLER: It’s over 2,000.
MAYOR FLINN: I think it was 2100 at one point. All right all in favor indicate by saying aye.
COUNCIL MEMBERS: Aye. MAYOR FLINN: Any opposed? COUNCIL MEMBER FELLER: Nay.
COUNCIL MEMBER TENDRICH: Nay.
MAYOR FLINN: Three/two. All right next item.
See Transcript of May 4, 2010, Hearing at pp. 297:16-299:12.
The Village relies upon the testimony of Mr. Mark Alvarez, the planner retained by the Intervenors, and the comments by neighboring residents with respect to traffic and noise. The only specific tes *25 timony offered by Mr. Alvarez’ [sic] that could arguably support the Village’s position is his statement that “[t]he school, and what I’m going to point out, is I believe that the use, as a school, is not consistent with what the Village’s comprehensive plan says.” See May 4, 2010 Hearing Transcript at p. 168. He further testified that school would be “increasing the population density of Parcel B well above “what’s expected for that zoning category.” Id at 183:7-17. Palmer Trinity contends that Mr. Alvarez’ testimony does meet the standard for competent substantial evidence.
The Florida Supreme Court has defined competent substantial evidence as follows:
Substantial evidence has been described as such evidence as will establish a substantial basis of fact from which the fact at issue can be reasonably inferred. We have stated it to be such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. In employing the adjective ‘competent’ to modify the word ‘substantial,’ we are aware of the familiar rule that in administrative proceedings the formalities in the introduction of testimony common to the courts of justice are not strictly employed. We are of the view, however, that the evidence relied upon to sustain the ultimate finding should be sufficiently relevant and material that a reasonable mind would accept it as adequate to support the conclusion reached. To this extent the ‘substantial evidence should also be ‘competent.’
De Groot v. Sheffield, 95 So.2d 912, 916 (Fla.1957).
An applicant seeking a special exception must demonstrate to the decision-making body that its proposal is consistent with the county’s land use plan; that the uses are specifically authorized in the applicable zoning district; and that the requests meet with the applicable zoning code standards of review. See Jesus Fellowship v. Miami-Dade County, Florida, 752 So.2d 708, 710.[sic] (Fla. 3d DCA 2000). If an applicant meets this burden, then the request must be granted unless the opponent carries its burden to demonstrate that the applicant’s request does not meet the standards and are in fact adverse to the public interest. Id.
The facts herein are analogous to those presented in Jesus Fellowship. In that case, the Third District quashed a circuit court decision which affirmed a decision of the Miami-Dade County Commission denying a portion of a church’s zoning application. In the zoning application at issue therein, the church sought to rezone land in a residential area to permit expansion of the church’s religious facilities and to permit a private school and day care center. Although the County Staff had recommended approval of 524 students, the Commission approved the rezoning but limited the number of students to 150 as a result of a “suggestion” by the opponents’ attorney after the close of the evidentiary hearing.
Here, as in Jesus Fellowship, the first mention of even the reduction in the number of students permitted occurred after the close of the evidentiary portion of the public hearing. And like the “suggestion” by the opponent’s counsel in Jesus Fellowship, the 900 number here materialized in the form of a motion for which no discussion on the record had been had nor foundation had been laid. Other than the brief discussion between the Mayor and Council Person Stanezyk, wherein the 900 number was admittedly arbitrary, there is no mention of that number, nor any mathe *26 matical calculation from which it could have been derived, contained in either the record or transcript preceding the adoption of the Resolution. Neither the testimony of Mr. Alvarez, nor of any of the individuals living in the neighborhood surrounding the school, provides a competent substantial basis for the 900 student cap on enrollment. Accordingly, this Court holds that the 900 student cap is not supported by competent substantial evidence. For the reasons set forth above, the provisions contained in Resolution 2010^48 relating to the ... 900 student cap on enrollment are QUASHED and this matter is REMANDED to the Village of Palmetto Bay for proceedings in accordance with this decision.
Palmer Trinity Private Sck, Inc., 18 Fla. L. Weekly Supp. at 342a (some emphasis added).
Palmetto Bay correctly sought no second tier review of this decision. Palmetto Bay applies the Miami-Dade County Zoning Code to special exception requests. See Palmer Trinity Private Sch., Inc. v. Vill. of Palmetto Bay, 31 So.3d 260, 263 n. 2 (Fla. 3d DCA 2010) (“The Village’s Planning and Zoning Powers Ordinance states that ‘[c]hapter 33 of the Miami-Dade Code entitled ‘Zoning’ ... shall be applied within the municipal boundaries of the Village of Palmetto Bay....’ See § 31 — 1(d) of the Village of Palmetto Bay Planning and Zoning Powers Ordinance.”). In Metropolitan Dade County v. Fuller, 497 So.2d 1322, 1322 (Fla. 3d DCA 1986), this court confirmed that under the Miami-Dade County Code a special exception request “is subject only to the test enunciated in section 33 — 311(d) [now section 33-311(A)(3) ] of the [Miami-Dade County] Code, which is essentially whether the proposal serves the public interest.” (Footnote omitted). An application satisfies this requirement once consistency with a zoning authority’s land use plan and code criteria have been demonstrated. Once this burden is met, “the application must be granted unless the opposition carries its burden, which is to demonstrate [by competent, substantial evidence] that the applicant’s requestfdoes] not meet the standards and are in fact adverse to the public interest.” Jesus Fellowship, Inc. v. Miami-Dade Cnty., 752 So.2d 708, 709 (Fla. 3d DCA 2000); see Irvine v. Duval Cnty. Planning Comm’n, 495 So.2d 167, 167 (Fla.1986) (“[0]nce the petitioner met the initial burden of showing that his application met the statutory criteria for granting such exceptions, ‘the burden was upon the Planning Commission to demonstrate, by competent substantial evidence presented at the hearing and made a part of the record, that the [special] exception requested by petitioner did not meet such standards and was, in fact, adverse to the public interest.’ ” (quoting Irvine v. Duval Cnty. Planning Comm’n, 466 So.2d 357, 364 (Fla. 1st DCA 1985) (Zehmer, J., dissenting))); City of Hialeah Gardens v. Miami-Dade Charter Found., Inc., 857 So.2d 202, 204 (Fla. 3d DCA 2003) (“Once a special exception applicant demonstrates consistency with a zoning authority’s land use plan and meet code criteria, the decision-making body may deny the request only where ‘the party opposing the application ... show[s] by competent substantial evidence that the proposed exception does not meet the published criteria.’ ” (quoting Fla. Power & Light Co. v. City ofDania, 761 So.2d 1089, 1092 (Fla.2000))).
There is no dispute that Palmer Trinity met its burden of demonstrating compliance with the standards imposed by the Miami-Dade County Zoning Code for securing a special exception. As the circuit court noted in its opinion, prior to the public hearing on Palmer Trinity’s special exception request, Palmetto Bay’s profes *27 sional staff reviewed Palmer Trinity’s request for compliance and “specifically recommended ... Palmer Trinity’s request for a special exception to expand the school onto Parcel B and to increase the student enrollment from 600 to 1150.” Palmer Trinity Private Sck, Inc., 18 Fla. L. Weekly Supp. at 342a. This recommendation came after a thorough thirty-nine page review of all applicable criteria and constitutes competent substantial evidence establishing that the request serves the public interest. See City of Hialeah Gardens, 857 So.2d at 205 (confirming that the testimony of professional staff, when based on “professional experiences and personal observations, as well as [information contained in an] application, site plan, and traffic study” constitutes competent substantial evidence); Palm Beach Cnty. v. Allen Morris Co., 547 So.2d 690, 694 (Fla. 4th DCA 1989) (confirming that professional staff reports analyzing a proposed use constituted competent substantial evidence); Metro. Dade Cnty. v. Fuller, 515 So.2d 1312, 1314 (Fla. 3d DCA 1987) (stating that staff recommendations constituted evidence); Dade Cnty. v. United Res., Inc., 374 So.2d 1046, 1050 (Fla. 3d DCA 1979) (confirming that the recommendation of professional staff “is probative”).
Based on this record, the burden shifted to the opponents of the request to introduce competent substantial evidence demonstrating that the application for 1150 students “did not meet [the] standards and was, in fact, adverse to the public interest.” Irvine, 495 So.2d at 167; City of Hialeah Gardens, 857 So.2d at 206. As the circuit court expressly found, no such evidence was adduced. In fact, the circuit court concluded that the testimony of the only competent witness to testify in opposition to the request, Mr. Alvarez, did not testify as to whether the 1150 student request was adverse to the public interest. Rather he testified only that he believed that the “use ” of the property as a school was not consistent with Palmetto Bay’s comprehensive plan and that the school would increase the population density of the parcel involved above that allowed. Use of the property for a school is not at issue here since no one claims it is not a permitted use. And in light of Council Member Feller and Mayor Flinn’s concession at the commission hearing that the regulations governing this parcel would allow up to 2100 students, it is clear that the circuit court’s conclusion that his testimony was not substantially related to the issue was correct.
Based on this record, the circuit court clearly was correct in striking the 900 student “cap.” Under our ruling in Jesus Fellowship, Inc., 752 So.2d at 711, it also had no choice but to strike the restriction, leaving intact Palmer Trinity’s entitlement to a special exception allowing 1150 students. There, as here, an applicant (a church) sought a special exception for a private school and a day care center for a specific number of students (524) but was restricted by the county commission to fewer students (150). There, as here, professional staff recommended approval of the request. There, as here, neighbors and a professional engineer appeared to oppose the request. There, as here, the opposition witness testimony, proved not to be competent substantial evidence' on the issue of the church’s student request. There, as here, removal of the unsupported condition mandated approval of the evi-dentiary-supported request:
In summary, the Church presented sufficient evidence to carry its burden; the objectors presented only testimony and documents that support the Church’s application or which the courts have held not to be evidence. When the circuit court decided there was evidence (substantial, competent) to support the *28 Commission’s denial of the application, it failed to apply the correct law as to the granting or denial of special exceptions and unusual uses, and failed to apply the correct law as to what constitutes competent evidence in such cases. As a result we quash the circuit court’s order and remand the case with instructions to the circuit court to direct the Commission to remove the limitation to K-6 and 150 students and to grant the application with grades K-12 and 524 students.
Id. at 711 (footnote omitted).
The special exception for 1150 students should, therefore, have been summarily enforced by Palmetto Bay. Despite the circuit court’s citation to and reliance on Jesus Fellowship, which required approval of Palmer Trinity’s 1150 student request, and its mandate, Palmetto Bay remained intransigent. On remand, Palmetto Bay decided to reconsider the application from scratch. On April 12, 2011, Palmer Trinity sought to preclude such action, filing a motion to enforce mandate in the circuit court. On May 5, 2011, the same three-judge circuit court panel which heard the underlying appeal granted the motion. Palmetto Bay then sought clarification of the order enforcing the mandate, contending that it believed that it was being ordered to “hold a public hearing, the record of which shall include but not be limited to all the evidence already in the record for a final decision as to the entire application— not just as to the two items litigated on appeal.” On June 1, 2011, the same three-judge circuit court panel rejected this notion ordering Palmetto Bay to remove the “cap” on the number of students requested and to take no further action inconsistent with its May 5, 2011 order and its present order, effectively precluding additional hearings and mandating approval of the 1150 request. This did not happen.
Again on July 12, 2011, Palmer Trinity filed a Renewed Emergency Motion to Enforce Mandate or Alternatively, to Enjoin and Prohibit Respondent from Violating the Express Mandate of [the] Court, wherein it argued that Palmetto Bay intended to violate the court’s orders at a public hearing scheduled for July 19, 2011. That emergency motion was denied. On July 19, 2011, Palmetto Bay held a public hearing and adopted Resolution 2011-53, amending and incorporating Resolution 2010-48, interpreting each of the circuit court’s prior determinations and rulings to mean that since Palmetto Bay had rejected the 1150 student enrollment requested in favor of a 900 student “cap,” and that cap had now been rejected, no increase in student enrollment above the existing 600 students would be allowed. Thereafter, on August 26, 2011, Palmer Trinity filed the Motion to Enforce Mandate, or in the Alternative for Extraordinary Relief, which resulted in the December 22, 2011 order here under review. In that order, the same three-judge panel of the Eleventh Judicial Circuit Court Appellate Division once again ordered enforcement of its mandate in Palmer Trinity Private School, Inc., 18 Fla. L. Weekly Supp. at 342a. This time the court clearly stated that “in order to strictly adhere to the Mandate’s plain language, the Village must remove or otherwise render ineffectual all of the provisions in the Amended Resolution which have the effect of reducing the maximum number of students allowed from 1150 to 900 or to below 900.” This conclusion is expressly predicated on the court’s extensive quotation from and reliance on Jesus Fellowship; on its conclusion that there is no dispute that Palmer Trinity’s request for 1150 students was “approved ... with a condition that capped student enrollment at 900”; and that removal of the cap entitled Palmer Trinity to approval of its 1150 student request.
*29 These conclusions are fully supported by the record and applicable law and do not in any manner depart from the essential requirements of the law.

Conclusion

In sum, Palmer Trinity sought a special exception which would permit expanding its student enrollment to 1150. At the public hearing which followed, Palmer Trinity adduced competent substantial evidence to support its 1150 student request; no competent substantial evidence was submitted to support either denying or limiting the school’s enrollment request. Palmetto Bay nonetheless denied the 1150 number, lowered the acceptable number to 900 students, and granted the exception. Based on its finding of the lack of competent substantial evidence supporting a “cap” below 1150, the circuit court appellate division ordered the limitation deleted. Palmetto Bay claimed that its compliance with that ruling required only that it delete the 900 student figure, making it free to leave its “denial” of special exception for 1150 students in place. A simple straight forward reading of the circuit court’s ruling contradicts that conclusion. When Palmetto Bay amended Resolution 2010^18, on July 19, 2011, that resolution should have reflected acceptance and incorporation of the circuit court’s decision rejecting any “cap” below 1150. In other words, Palmetto Bay is wrong in arguing its denial of the special exception for 1150 students could remain in place after the circuit court’s February 11, 2011 ruling. Palmetto Bay’s denial of the special exception for 1150 students should have been excised from its Amended Resolution, just as was the 900 student “cap.” Any other interpretation of the circuit court’s February 11, 2011 ruling amounted to wishful thinking at best, and more likely a willful disobedience of that court’s instructions. The circuit court’s order enforcing its earlier mandate was therefore entirely proper and in no way justifies the issuance of the writ sought herein.
For these reasons, the petition for writ of certiorari is denied.

. The order On Motion to Enforce Mandate or in the Alternative, for Extraordinary Relief was issued on December 22, 2011.