LOGUE, J.
Yuri Sucart and Jose Gustavo Gomez seek writs of certiorari to prevent the plaintiff in the lawsuit below from taking their depositions. They contend that federal law preempts the lawsuit, and therefore the trial court lacks subject matter jurisdiction to issue the subpoenas. Because the record before us does not clearly establish that the lawsuit is preempted, Sucart and Gomez have failed to meet the high standard required for the issuance of the extraordinary writ. We therefore deny the petitions.
In the lawsuit below, the Office of the Commissioner of Baseball alleged that eight defendants tortiously interfered with contracts between the Commissioner and the Major League Players Association, including collective bargaining agreements that prohibited the use of certain performance-enhancing drugs. The complaint alleged that the defendants participated in a scheme to distribute the drugs to players, *1114 resulting in damages to the Commissioner. Although not parties to the lawsuit, Sucart and Gomez were subpoenaed to be deposed. In response, they filed various motions for protective orders to quash the subpoenas.
In resisting the subpoenas, Sucart and Gomez argued that the resolution of the tortious interference claims will require the trial court to interpret the collective bargaining agreements, and that these claims are therefore preempted by Section 301 of the federal Labor Management Relations Act. 29 U.S.C. § 185. See also Moon v. Goodyear Tire & Rubber Co., 519 Fed.Appx. 620, 623 (11th Cir.2013) (quoting Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 405-06, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988)) (“[I]f the resolution of a state-law claim depends upon the meaning of a collective bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor law principles — necessarily uniform throughout the Nation — must be employed to resolve the dispute.”). The trial court denied their motions and Sucart and Gomez filed petitions with this court, which have been consolidated.
At the outset, we acknowledge that the trial court erred in finding that Sucart and Gomez, as non-parties, lacked standing to raise the trial court’s alleged lack of subject matter jurisdiction over the Commissioner’s claims, at least in regards to their motions for protective orders. Su-cart and Gomez assert, in part, that the trial improperly exercised subject matter jurisdiction over the matter when it subjected them to the court’s subpoena power. The trial court’s subpoena power is delineated in Florida Rule of Civil Procedure 1.410, the counterpart to Federal Rule of Civil Procedure 45. With respect to Rule 45, the United States Supreme Court has stated
Federal Rule of Civil Procedure 45 grants a district court the power to issue subpoenas as to witnesses and documents, but the subpoena power of a court cannot be more extensive than its jurisdiction. It follows that if a district court does not have subject-matter jurisdiction over the underlying action, and the process was not issued in aid of determining that jurisdiction, then the process is void and an order of civil contempt based on refusal to honor it must be reversed.
U.S. Catholic Conference v. Abortion Rights Mobilization, Inc., 487 U.S. 72, 76, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988). Although this issue has not been addressed in Florida precedent, the comments to Rule 1.410 indicate that “Federal Rule 45 is the same in many respects” and that “Florida courts rely on the federal courts’ construction of the rule in the absence of a square holding in Florida.” Fla. R. Civ. P. 1.410 cmt. (1967). As such, Rule 1.410 must be interpreted as permitting a non-party under court subpoena to challenge the subpoena by raising the trial court’s lack of subject matter jurisdiction over the claim.
A slightly different issue concerns when and if a trial court’s rejection of such an argument is reviewable by cer-tiorari under Florida law. Turning to the petitions for certiorari, we begin with the premise that “[a] non-final order for which no appeal is provided by rule 9.130 may be reviewable by petition for a writ of certio-rari, ... only [where] [t]he petitioning party ... demonstrate^] that the contested order constitutes (1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case[,] (3) that cannot be corrected on postjudgment appeal.” Bd. of *1115 Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 454 (Fla.2012) (citations and internal quotations omitted). “[A] material injury in the proceedings that cannot be corrected on appeal” is “sometimes referred to as irreparable harm.” Nader v. Fla. Dep’t of Highway Safety & Motor Vehicles, 87 So.3d 712, 721 (Fla.2012), reh’g denied (May 4, 2012). In certain circumstances, certiorari may be appropriate to review orders compelling discovery from non-parties. See Hill v. Doughty, 765 So.2d 66 (Fla. 4th DCA 2000) (granting certiorari and quashing a discovery order entered against a non-party where there was “no evidence to support ... allegation of a relationship between the non-party petitioners and the judgment debtor”).
The burden on a party to show the departure from an essential requirement of law, however, is high. “A departure from the essential requirements of the law that will justify issuance of this extraordinary writ requires significantly more than a demonstration of legal error.” Vill. of Palmetto Bay v. Palmer Trinity Private Sch., Inc., 128 So.3d 19, 20 (Fla. 3d DCA July 5, 2012). This Court recently quoted with approval Justice Boyd’s classic formulation:
The required “departure from the essential requirements of law” means something far beyond legal error. It means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated -with disregard of procedural requirements, resulting in a gross miscarriage of justice. The writ of certiorari properly issues to correct essential illegality but not legal error.
Id. (quoting Jones v. State, 477 So.2d 566, 569 (Fla.1985) (Boyd, C.J., concurring specially)).
Sucart and Gomez have not meet this burden in this case, at least in its pleading stage. It is far from clear on this record that the Commissioner’s claims would be preempted by Section 301. State-law claims are preempted by Section 301 “when resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract.” Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 220, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985). But “every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement, or more generally to the parties to such an agreement” is not “necessarily .... pre-empted by § 301.” Id. And “Section 301 preemption does not automatically divest state courts of jurisdiction, ... but only displaces state law causes of action that require interpretation of a collective bargaining agreement and mandates that federal law be applied.” Acevedo v. Caribbean Transp., Inc., 673 So.2d 170, 172 (Fla. 3d DCA 1996).
The instant lawsuit is not between parties to the collective bargaining agreement over the collective bargaining agreement. Instead, it is a lawsuit between one party to the collective bargaining agreement and various third parties over a tort. The collective bargaining agreement is, at best, ancillary to the plaintiffs’ cause of action. In this context, it is significant that Sucart and Gomez have failed to identify any specific provision of the collective bargaining agreement which is in dispute and which will need to be construed as part of this lawsuit. In fact, it is alleged in the second amended complaint that certain parties to the agreement have already admitted that the use of performance enhancing substances violated the collective bargaining agreement and that some Major League Baseball players acknowledged breaching the agreement in this regard. Accepting *1116 these allegations as true, as we must at this stage of the proceedings, it would appear that little or no interpretation of the agreement would be necessary to resolve the Commissioner’s claims here, and certainly not to the degree that the claims would be preempted by Section 301.
The issues raised by the lawsuit appear to center not on whether the players violated the contracts, but instead on what role, if any, the defendants played in the players’ already-acknowledged violation of the agreement. The resolution of the claims will depend on purely factual questions relating to the conduct and motivations of the defendants, “separate and distinct from those involving the construction or interpretation of the agreement.” Kresse v. City of Hialeah, 539 So.2d 534, 535 (Fla. 3d DCA 1989); see also Sw. Gulfcoast, Inc. v. Allan, 513 So.2d 219, 227 (Fla. 1st DCA 1987), receded from in part on other grounds, Fisher v. Int’l Longshoremen’s Ass’n, 827 So.2d 1096 (Fla. 1st DCA 2002) (holding that there was no preemption where “it was not shown that resort to an interpretation of the labor contract itself is necessary to define the state right being asserted”).
Of course, as the factual record develops, this conclusion might change. If discovery reveals that this case turns on the interpretation of a provision of the collective bargaining agreement which is disputed and that such an interpretation may have national ramifications, the conclusion that this case is not preempted would have to be re-examined. See Hernandez v. Coopervision, Inc., 661 So.2d 33, 35 (Fla. 2d DCA 1995). And, at that point, a determination would have to be made if the preemption eliminated the trial court’s jurisdiction or merely served as an affirmative defense. See Bertoni v. Stock Bldg. Supply, 989 So.2d 670, 674 (Fla. 4th DCA 2008).
At this stage of the proceedings, however, we cannot say that the trial court’s assertion of jurisdiction in this matter, which on its face appears reasonable, rises to the level “of an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice” which is what is required to justify the issuance of the extraordinary writ of cer-tiorari. Jones, 477 So.2d at 569. Therefore, discovery should go forward.[1]
Petitions denied.

. Because we conclude that the trial court did not depart from the essential requirements of the law, we need not address whether the discovery orders would cause material injury to Sucart and Gomez that would be irreparable by way of appeal at the conclusion of the case.