LOGUE, J.,
(dissenting).
The majority issues a writ of certiorari to protect third parties Mark Rousso and the Alhadeff Law Group, P.L. from certain discovery. The majority concludes that the discovery requested is irrelevant to the issues raised by the pleadings in this case. The discovery at issue is framed to establish the identity of the investors who, on May 14, 2013, purchased the parking lot located at 208 West Flagler. The identification of the investors will either negate or affirm one of the crucial facts expressly alleged in the complaint and denied in the answer. It seems to me, therefore, that the discovery is highly relevant to the issues raised in the pleadings.
In addition, given our limited scope of review on certiorari, I do not believe that we can hold that the trial judge departed from the essential requirements of law when he impliedly determined a confidentiality agreement could adequately protect the petitioner’s unquestioned privacy interests. I respectfully dissent.

*73
FACTS AND PROCEDURAL HISTORY

Andrew Mirmelli wanted to purchase or lease parking lots on the 200 block of West Flagler. To this end, he entered into a confidentiality and non-circumvention agreement with William Scott Hannon and G & S Realty Advisors Corporation (collectively, “Hannon”). Summarizing the agreement in very general terms, Hannon promised to provide Mirmelli with information about Hannon’s progress in purchasing such lots with the idea that Mir-melli might purchase, lease, or invest in lots acquired by Hannon. As part of the arrangement, Mirmelli agreed not to try to directly purchase the lots and agreed to keep confidential both his interest in the lots and any information Hannon provided to him. This arrangement burst when unknown investors, on May 14, 2013, purchased a parking lot on the 200 block of West Flagler, namely the parking lot located at 208 West Flagler.
In the complaint, Mirmelli sued Hannon to be released from the agreement and for damages. His complaint alleged he was damaged because he was not one of the investors who purchased the parking lot. In this regard, the complaint alleged:
18. Subsequent to meeting with Defendant, HANNON, Plaintiff, MIRMELLI learned that a property was for sale located at 208 West Flagler Street. This property was later sold to a third party.
19. Due to the actions and/or inactions of Defendants, HANNON and G & S, Plaintiff, MIRMELLI did not purchase this property or any other property located on this block.
21.[A]s a direct and proximate result of the Defendants’ false or materially misleading statements regarding same, the Plaintiff has incurred substantial damages, including, without limitation, the ability to purchase, and/or lease a parking lot located at 208 West Flagler Street ....
(emphasis added). In the answer, Hannon expressly denied each of these allegations.
In the discovery at issue, Hannon sought to test these allegations by discovering the identity of the investors who were behind the purchase, on May 14, 2013, of the “parking lot located at 208 West Flagler.”
First, Hannon subpoenaed Mark Rous-so, the manager of Miami Flagler Parking Lots, LLC, the company that purchased the 208 West Flagler property. Hannon requested that Rousso provide the following documents:
1. All agreements between Miami Fla-gler Parking Lots, LLC and Andrew Mirmelli.
2. All communications between you and Andrew Mirmelli. This will include all emails and text messages. If these have not been printed out, you are requested to have these available in downloadable form.
3. Any and all documents showing the source of the funds used by Miami Fla-gler Parking Lots, LLC to acquire or purchase the real property identified in the attached deed. [The attached warranty deed identified the parking lot located at 208 West Flagler by its legal description].
4. The sales contract for the acquisition of the real property identified in the deed attached hereto.
Second, Hannon subpoenaed the records custodian of the Alhadeff law firm and requested the custodian to bring the following records:
1. All records pertaining to the deposit placed with respect to the attached contract [for sale of the parking lot located at 208 West Flagler on May 14, 2013] to include, but not be limited to:
*74 a. Copies of any checks delivered to the firm that comprise the deposit;
b. If the deposit was placed by wire transfer, the advise [sic] issued by the bank into which the deposit was placed;
c. Any documentation that shows or reflects the source of the deposit;
d. The deposit slip pertaining to the deposit into the firm’s account;
e. The trust account records of the firm pertaining to the deposit, in particular, those required by Rule 5-1.2 of the Rules Regulating Trust Accounts.
Rousso and Alhadeff filed the petition at issue. Their main argument focused on the contention that the subpoenaed records were financial records from third parties that were not relevant.[5]

ANALYSIS

In the first place, the narrowly-focused discovery at issue strikes me as highly relevant to the pleadings. The records that were subpoenaed will almost certainly reveal the identity of the investors who purchased the parking lot. The identity of the investors will either affirm or negate an allegation crucial to Mirmelli’s causes of action. Central to Mirmelli’s complaint is that he was not involved in the purchase of the parking lot that occurred on a particular date. Mirmelli expressly alleged this fact in the complaint; Hannon expressly denied Mirmelli’s allegation in the answer. If the discovery shows that Mirmelli was not one of those investors, Mirmelli’s disputed allegation on this point would be established. If, on the other hand, the discovery shows that Mirmelli was, in fact, one of those investors, his claim of being damaged because he was not one of the investors would collapse. This discovery is relevant to the pleadings because it addresses a crucial fact alleged in the complaint and denied in the answer.
The more difficult issue, to me, concerns the fact that some, but not all, of the requested information is either confidential or privileged.[6] The parties spent very little time on this point. On this point, however, Hannon, the party seeking the discovery, announced in open court that he would sign a confidentially agreement. The Florida Supreme Court has held that such an agreement, when submitted to the court as an agreed protective order, can be an acceptable method to protect the confidentiality of records and thereby mitigate an irreparable harm that might result from disclosure. Bd. of Trs. of Internal Improvement Trust Fund v. Am. Educ. Enters., LLC, 99 So.3d 450, 459 (Fla.2012) (“The rules of discovery provide sufficient means to limit the use and dissemination of discoverable information via protective orders, and it is the responsibility of the trial court to decide whether to employ those means in this case.”).
Although Board of Trustees involved discovery between parties, its statement regarding confidentiality orders applies equally as well to discovery from third parties. Petitioners have not argued, much less demonstrated, that it is impractical to draft a confidentiality order sufficient to protect their admittedly legitimate privacy interests.
I respect the concern of the majority to protect persons who are not parties to the *75 litigation from discovery requests that may burden or even harm them. But our rules of civil procedure envision discovery being taken from parties and non-parties alike. Few lawsuits could proceed without testimony or documents from third parties. I believe district courts should refrain from being drawn into attempts to supervise the timing, sequence, or contents of discovery from our remote vantage point on an appellate court. Our law places the responsibility to manage the unfolding of discovery in the sound discretion of our circuit and county judges.
For this very reason, the standard governing the issuance of a writ of certiorari requires the reviewing court to find that the lower court departed from the essential requirements of law. This means more than mere legal error: “[i]t means an inherent illegality or irregularity, an abuse of judicial power, an act of judicial tyranny perpetrated with disregard of procedural requirements, resulting in a gross miscarriage of justice.” Vill. of Palmetto Bay v. Palmer Trinity Private Sell., Inc., 128 So.3d 19, 20 (Fla. 3d DCA 2012) (citations and quotations omitted).
In this case, the trial judge essentially determined a confidentiality agreement was sufficient to protect the privacy interest of third parties regarding discovery that will either prove or disprove a factual issue expressly alleged in the complaint and denied in the answer. In the record of this case, the trial court’s decision does not constitute a departure from the essential requirements of the law justifying the issuance of the extraordinary writ of cer-tiorari. I would leave this discovery dispute in the good hands of the seasoned trial judge, which is where I believe our law intends it to be.

. Neither side adequately briefed the issue of whether the records requested from the law firm were protected by the attorney client privilege. For purposes of this dissent I assume those records reflect confidential financial information but not matters protected by the attorney client privileged.

. No one has suggested that the request for records of agreements and communications between Mirmelli and Miami Flagler Parking Lots, LLC implicates privileged materials.